761 F.2d 609
 32 Cont.Cas.Fed. (CCH) 73,628
 CHOCTAW MANUFACTURING CO., INC., Plaintiff-Appellant,
v.
UNITED STATES of America; Caspar Weinberger, Sec. of
Defense; Frank L. Coccia, Dir., Clothing & Textiles
Directorate, Defense Personnel Support Center, and J.H.
Rutter Rex Manufacturing Company, Inc., Defendants-Appellees.
 No. 84-7485.
 United States Court of Appeals,
Eleventh Circuit.
 May 7, 1985.
 
 Champ Lyons, Jr., Mobile, Ala., Dennis J. Riley, Donald W. Fowler, Washington, D.C., for plaintiff-appellant.
 Molly Houghton Colburn, Philadelphia, Pa., Ginny Granade, Asst. U.S. Atty., Mobile, Ala., for U.S.
 Daniel Lund, New Orleans, La., Reggie Copeland, Jr., Mobile, Ala., for Rutter Rex Mfg. Co.
 Appeal from the United States District Court for the Southern District of Alabama.
 Before TJOFLAT and JOHNSON, Circuit Judges, and DUMBAULD*, District Judge.
 TJOFLAT, Circuit Judge:
 
 
 1
 This is a suit by an unsuccessful bidder, Choctaw Manufacturing Co., Inc. (Choctaw), over two Department of Defense contracts the Department had set aside for "small businesses" pursuant to the Small Business Act, 15 U.S.C. Sec. 631 et seq. (1982), and the Armed Services Procurement Act, 10 U.S.C. Sec. 2301 et seq. (1982). In its complaint, Choctaw alleged that the Department's contracting officer violated the law governing the letting of such contracts by awarding the contracts to a firm that was not a small business. It sought a declaration to that effect and an injunctive order requiring the contracting officer to award the contracts to it, as the second lowest bidder. The district court, after granting Choctaw's application for a temporary restraining order, heard the case on the merits and dismissed Choctaw's complaint.[1] When the court announced its decision, Choctaw took this appeal and requested the district court to enjoin the performance of the contracts pending our resolution of its appeal. The district court granted its request.
 
 I.
 A.
 
 2
 To understand the nature of the dispute before us, it is necessary first to set forth in some detail the statutory and regulatory scheme under which contracts set aside for small businesses are bid and ultimately awarded. The Small Business Act and the Armed Services Procurement Act both state that it is the policy of the United States government to set aside a fair proportion of all government contracts for small businesses. 15 U.S.C. Sec. 631(a); 10 U.S.C. Sec. 2301(b). Congress has delegated the responsibility for implementing this policy primarily to the Small Business Administration (SBA), see H.R.Rep. No. 494, 83d Cong., 1st Sess., reprinted in 1953 U.S.Code Cong. & Ad.News 2020, 2021; government agencies must look to the SBA for guidance in determining which contracts should be set aside for small businesses. See 15 U.S.C. Sec. 644; S.Rep. No. 1070, 95th Cong., 2d Sess. 17-29, reprinted in 1978 U.S.Code Cong. & Ad.News 3835, 3851-53. The SBA has the sole responsibility, however, to determine what constitutes a "small business" eligible to bid on a government contract set aside for small businesses, 15 U.S.C. Sec. 637(b)(6) (1982); its determination is binding on all officers of the government having procurement responsibilities. Id.
 
 
 3
 Pursuant to its broad statutory grant of authority, the SBA has promulgated regulations establishing the criteria to be employed in determining whether, in a particular industry, a business is small. 13 C.F.R. Sec. 121.3-8 (1983) through 13 C.F.R. Sec. 121.3-16 (1983).[2] It has also promulgated regulations setting forth the procedure by which it determines whether a firm is a small business. 13 C.F.R. Sec. 121.3-4; 13 C.F.R. Sec. 121.3-5; 13 C.F.R. Sec. 121.3-6. These latter regulations are critical to the dispute here.
 
 
 4
 The SBA places great reliance on the marketplace to ensure that only small businesses are awarded contracts set aside for small businesses. A firm need not obtain an SBA determination that it is small before bidding on such contracts. See 13 C.F.R. Sec. 121.3-4. Any firm, large or small, can bid on a set aside contract by self-certifying that it is small. The SBA relies on the bidders who are legitimate small businesses and/or the contracting officer responsible for the procurement to expose those firms that are large and thus unqualified to bid on the contract.
 
 
 5
 A contracting officer must accept a firm's self-certification as valid unless he has reason to question the truthfulness of such certification or receives a timely protest from "another bidder"[3] contesting the firm's small size status. See 13 C.F.R. Sec. 121.3-5. If neither questions the firm's size, an unqualified "large" firm could be awarded a contract set aside exclusively for small businesses. This is unlikely, though, because those competing in the set aside contract market have a strong interest in seeing that only small companies receive the contracts and are quick to lodge protests against bidders they believe are large. This threat of protest probably minimizes the number of large businesses that bid on set aside contracts.
 
 
 6
 There is a class of bidders not eligible to certify themselves as small without first obtaining from the SBA an explicit determination that they are such. These are bidders whom the SBA has previously determined, as a result of an earlier size protest, not to be small.[4] 13 C.F.R. Sec. 121.3-4. A contracting officer receiving a bid from such a business must reject its bid as nonresponsive. See 32 C.F.R. Sec. 1-703(b).
 
 
 7
 The regulations specify the course of action a contracting officer must follow when a bidder's size is questioned. If the SBA has previously found the bidder not to be small, the officer must reject its bid as nonresponsive, as we have indicated above. Otherwise, the officer must forward the matter to the SBA for a size determination. 13 C.F.R. Sec. 121.3-5.[5] The SBA's determination of the firm's size is binding on the officer, and he must either accept or reject the firm's bid in accordance with that determination. 15 U.S.C. Sec. 637(b)(6).
 
 
 8
 To allow government contracts to be let as quickly as possible and to bring certainty and finality to the contracting process, the SBA's regulations provide strict time limits for the lodging of size protests and the SBA's resolution thereof. For example, a bidder protesting a competitor's size must file his protest with the contracting officer within five working days after the bid is opened. 13 C.F.R. Sec. 121.3-5; 32 C.F.R. Sec. 1-703(b)(1). The SBA will decide a protest filed beyond this period, but its decision will apply prospectively only. An SBA size determination is made at two levels. The regional director, to whom the contracting officer forwards a size protest,[6] makes the initial decision; the Size Appeals Board (Appeals Board)[7] decides any appeal that may be taken from that decision. If there is no appeal, the regional director's decision is final. 13 C.F.R. Sec. 121.3-5; 32 C.F.R. Sec. 1-703(b)(3).
 
 
 9
 The regional director has ten working days within which to decide a size protest. If he does not do so within that time period, the contracting officer may presume that the "protested concern" is small, and thus eligible to bid on the contract, 32 C.F.R. Sec. 1-703(b)(3), and award the contract to such concern if he believes that it would be disadvantageous to the government to await the regional director's final decision. Id.
 
 
 10
 Once the regional director makes a final decision, a party has five days to appeal that decision to the Appeals Board. 13 C.F.R. Sec. 121.3-6(b)(3); 32 C.F.R. Sec. 1-703(b)(3). The SBA will entertain an appeal taken after this time, but its decision will not apply to the procurement in question. 13 C.F.R. Sec. 121.3-6(b)(3). The appellant is deemed to have "waived its rights of appeal " with respect to that procurement, and the contracting officer must treat the regional director's decision as final. Id. (emphasis added); 32 C.F.R. Sec. 1-703(b)(4).
 
 
 11
 If the appeal is timely, however, the contracting officer must wait another twenty days (from the date the appeal is filed) before taking any action. If the Appeals Board does not decide the case within that period, the contracting officer must accept the regional director's decision as final and award the contract accordingly. 32 C.F.R. Sec. 1-703(b)(3). Thus, any Appeals Board decision handed down after the twenty-day period has prospective effect only.
 
 B.
 
 12
 On February 2, 1984, the Department of Defense opened bidding on a small business set aside contract for 143,808 pairs of men's white trousers. (Solicitation No. 315.) Rutter Rex was the low bidder on this contract; Choctaw was next. To comply with the solicitation requirements, both Rutter Rex and Choctaw certified in their bids that they were small businesses. On February 6, Choctaw wrote a letter to the contracting officer, Melvyn Suplee, contending that he should award the contract to Choctaw, even though it was the second lowest bidder, because Rutter Rex had improperly certified itself as a small business. Choctaw informed Suplee that the SBA, in a previous size determination proceeding, had declared Rutter Rex to be not small, thus disqualifying Rutter Rex from self-certifying. 13 C.F.R. Sec. 121.3-4; 32 C.F.R. Sec. 1-703(b). Choctaw advised the contracting officer that he "need not refer Rutter-Rex's size status to the SBA because Rutter-Rex has the burden of obtaining certification of its small size status before it can self-certify as a small business." (Emphasis in original.)
 
 
 13
 On February 8, 1984, the Department of Defense opened bidding on a contract for 186,510 pairs of men's white dress trousers. (Solicitation No. 314.) This contract had also been set aside by the Department of Defense for small businesses. Both Rutter Rex and Choctaw had submitted bids, certifying that they were small business concerns. Again Rutter Rex was the low bidder, and Choctaw was second. When Choctaw learned that Rutter Rex had submitted the low bid, it wrote Suplee, complaining once more that Rutter Rex was barred from certifying itself as a small business because of the SBA's prior size determination. Choctaw emphasized that it was not protesting "the size-status of Rutter-Rex which require[d] referral to the SBA"; rather, it was urging Suplee not to accept Rutter Rex's representation that it was a small business and to reject its bid. Choctaw reminded Suplee that he had a duty, imposed by Department of Defense regulation, 32 C.F.R. Sec. 1-703(b), to reject any bid made by a firm previously held by the SBA to be not small. After conferring with counsel, Suplee decided to treat both of Choctaw's letters as size protests under 13 C.F.R. Sec. 121.3-5, and he forwarded them to the SBA's regional director.
 
 
 14
 On February 17, 1984, the regional director replied. He stated that the Appeals Board had previously found that Dauphine Corporation, an affiliate of Rutter Rex, was not a small business because of its affiliation with Rutter Rex, "a known large company." The intent of the applicable regulations, the director stated, was to prevent future self-certification by a firm determined to be not small (i.e., Dauphine) or its affiliate (i.e., Rutter Rex). Consequently, neither Dauphine nor Rutter Rex was eligible to self-certify as a small business. The director concluded his letter with the following paragraph:
 
 
 15
 In the instant case we view the problem as responsiveness to your solicitation, since the size matter was addressed in the most recent determination. Responsiveness clearly lies within the purview of the Contracting Officer. Therefore, it would not be within our jurisdiction to process this protest.
 
 
 16
 (Emphasis added.) Copies of this letter were sent to Rutter Rex and Choctaw.
 
 
 17
 Suplee read the regional director's letter as an instruction from the SBA that he should determine which firm should be awarded the contracts. He did so because the regional director viewed the problem as one of "responsiveness to ... solicitation"[8] and disavowed jurisdiction of the matter. Suplee's first reaction was to award the two contracts to Choctaw, but, after conferring with counsel, he decided to delay his decision. Counsel advised such action because he thought the SBA was reconsidering the effect an SBA size determination might have on a firm's affiliates; at that moment, the regional director had before him a "protest" Gulf Corporation (Gulf) had made to Suplee, questioning Rutter Rex's bid on another contract set aside for small businesses, Solicitation No. 265. The basis for Gulf's protest was identical to that of Choctaw's.[9]
 
 
 18
 The regional director responded to Gulf's protest as he had to Choctaw's, advising Suplee that the SBA, in Dauphine's size determination proceeding, had found Dauphine not to be small because of its affiliation with Rutter Rex. With this response, Suplee again decided to award Solicitation Nos. 314 and 315 to Choctaw. He stayed his hand, however, when Rutter Rex appealed the regional director's decision to the Appeals Board. Although its appeal was restricted to Solicitation No. 265, Rutter Rex sought, within the confines of that appeal, a belated review of the regional director's dispositions regarding Solicitation Nos. 314 and 315. On March 21, the Appeals Board dismissed Rutter Rex's appeal as it applied to those two solicitations because it was untimely; Rutter Rex had taken the appeal more than five days after receiving the regional director's February 17 letter. (Decision A.)
 
 
 19
 Following the release of Decision A, Choctaw wrote Suplee, asking him to award it Solicitation Nos. 314 and 315. Suplee did not award Choctaw the contracts, however; he decided to await the Appeals Board's decision on Solicitation No. 265. He had received a copy of an amicus curiae brief SBA's general counsel had filed in Rutter Rex's appeal, arguing that a bidder should not be bound by the size determination of an affiliate and that Rutter Rex should have been able to self-certify on Solicitation No. 265 and Nos. 314 and 315 as well. General counsel's position was, of course, directly contrary to that of the regional director, causing Suplee to believe that Rutter Rex's bid on Solicitations Nos. 314 and 315 may have been responsive.
 
 
 20
 On May 31, 1984 the Appeals Board rendered its decision on Rutter Rex's appeal with regard to Solicitation No. 265 (Decision B). It held that a firm should not be bound by the prior size determination of an affiliate and that the Dauphine size determination had not disqualified Rutter Rex from self-certifying on that solicitation.
 
 
 21
 Following the publication of Decision B, Suplee promptly awarded all three contracts, Solicitation Nos. 265, 314, and 315, to Rutter Rex. Choctaw responded by filing this suit against the United States, the Secretary of Defense, and the Director of Clothing and Textile Directorate, Defense Personnel Support Center. These latter two defendants are Suplee's superiors.[10] Choctaw sought a declaratory judgment that it was the low eligible bidder on Solicitation Nos. 314 and 315 and an injunctive order directing the contracting officer to terminate the contracts with Rutter Rex and to award them to Choctaw.
 
 
 22
 On June 5, the district court issued a temporary restraining order, enjoining the defendants from going forward with the two contracts awarded to Rutter Rex until further order of the court. Fed.R.Civ.P. 65(b). Shortly thereafter, the court made Rutter Rex a party-intervenor and subject to the restraining order. The court then convened a hearing on the merits, see Fed.R.Civ.P. 65(a)(2), and denied Choctaw all relief, dismissing its complaint with prejudice. The court did enjoin the defendants and Rutter Rex from performing the challenged contracts, however, pending this appeal.
 
 II.
 
 23
 Before reaching the merits of this controversy, we must dispose of two threshold issues: the district court's subject matter jurisdiction and Choctaw's standing to pursue the remedy it seeks. Choctaw's complaint in the district court predicated the court's subject matter jurisdiction on several statutes, including section 10 of the Administrative Procedure Act (APA), 5 U.S.C. Sec. 702 (1982), and 28 U.S.C. Sec. 1331 (1982). The former statute could not have provided a jurisdictional basis because, as the Supreme Court held in Califano v. Sanders, 430 U.S. 99, 105-07, 97 S.Ct. 980, 984-85, 51 L.Ed.2d 192 (1977), Congress did not intend section 10 to serve as an independent source of district court jurisdiction. Such jurisdiction must be provided by other statutory authority. That authority is provided in this case by 28 U.S.C. Sec. 1331 (1982); Choctaw's dispute "arises under" The Armed Services Procurement Act, the Small Business Act, and the regulations promulgated thereunder.
 
 
 24
 While section 10 of the APA did not confer subject matter jurisdiction on the district court, it does aid in informing our decision on standing. Section 10 provides:
 
 
 25
 A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review.
 
 
 26
 A person has standing under section 10, and in a constitutional sense,[11] if he can demonstrate that the challenged agency action has caused him "injury in fact" and that such injury was to an interest "arguably within the zone of interest to be protected or regulated" by the statute the agency is claimed to have violated. Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 153-54, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970); Barlow v. Collins, 397 U.S. 159, 164, 90 S.Ct. 832, 836, 25 L.Ed.2d 192 (1970); See Sierra Club v. Morton, 405 U.S. 727, 732-34, 92 S.Ct. 1361, 1365, 31 L.Ed.2d 636 (1972). This court and others have concluded that unsuccessful bidders, such as Choctaw, challenging procurement decisions governed by statutes and regulations, such as those applicable in this case, meet this two-fold test. E.g. Kinnett Dairies, Inc. v. Farrow, 580 F.2d 1260, 1265-66 (5th Cir.1978); Merriam v. Kunzig, 476 F.2d 1233, 1242-43 (3d Cir.), cert. denied, 414 U.S. 911, 94 S.Ct. 233, 38 L.Ed.2d 149 (1973); Aero Corp. v. Department of the Navy, 540 F.Supp. 180, 203 (D.D.C.1982); Black Hotel Co. v. Froehlke, 351 F.Supp. 956, 958 (D.Okla.1972).
 
 
 27
 The unsuccessful bidder meets the "injury in fact" prong of the test because "the economic injury he suffer[s] ... is manifest. No serious doubt exists that [a disappointed bidder] suffer[s] economic loss by virtue of [his] inability to obtain the contract at issue." Hayes International Corp. v. McLucas, 509 F.2d 247, 255 (5th Cir.), cert. denied, 423 U.S. 864, 96 S.Ct. 123, 46 L.Ed.2d 92 (1975). The unsuccessful bidder meets the second prong of the standing test because he is within the "zone of interest" Congress intended to protect. As the Second Circuit observed in upholding an unsuccessful bidder's challenge of a contracting officer's compliance with the Armed Services Procurement Act and its regulations, one of the statutes and regulatory schemes under review here,
 
 
 28
 [w]hen ... the low bidder [is] capriciously rejected, it is hard to sustain the thesis that the unsuccessful bidder is not even "arguably within the zone of interests to be protected and regulated," ... .
 
 
 29
 ....
 
 
 30
 Doing business with the Government has become an important part of American economic life; arbitrary deprivation of government contracts on non-discretionary grounds is a serious wrong against which Congress may well have wished to protect....
 
 
 31
 B.K. Instrument, Inc. v. United States, 715 F.2d 713, 719 (2d Cir.1983). We find this analysis persuasive and apply it here. Choctaw is within the zone of interest sought to be protected by the Small Business Act and the SBA's regulatory scheme involved in this case; this is apparent from even a cursory reading of the legislative history of that Act. We therefore conclude that Choctaw had standing to bring this action and now address the merits of its claim, that the contracting officer, Suplee, acted unlawfully in awarding Solicitation Nos. 314 and 315 to Rutter Rex.
 
 III.
 A.
 
 32
 The standard we must employ in reviewing the contracting officer's action is that set forth in Kinnett Dairies, Inc. v. Farrow, 580 F.2d 1260 (5th Cir.1978).[12] There, we stated that a disappointed bidder, challenging the setting aside and letting of contracts for small businesses,
 
 
 33
 "bear[s] a heavy burden of showing either that (1) the procurement official's decisions on matters committed primarily to his own discretion had no rational basis, or (2) the procurement procedure involved a clear and prejudicial violation of applicable statutes or regulations."
 
 
 34
 580 F.2d at 1271 (quoting Kentron Hawaii Ltd. v. Warner, 480 F.2d 1166, 1169 (D.C.Cir.1973)). This alternative standard is, of course, nothing more than a restatement of the standard set forth in the APA, which provides that a reviewing court may hold unlawful and set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. Sec. 706(2)(A).
 
 
 35
 Rutter Rex and the government appellees argue that we must apply the first of Kinnett Dairies' alternative standards in reviewing the contracting officer's action in this case. We disagree. The contracting officer's awards of the contracts to Rutter Rex did not constitute acts of discretion; thus Kinnett Dairies' first standard is inapplicable. His actions amounted to the performance of ministerial acts; hence, the second standard applies. We must determine, therefore, whether the contracting officer committed "clear and prejudicial violation[s] of applicable statutes or regulations."B.
 
 
 36
 As we noted in Part I.A., supra, the regulation governing Suplee's treatment of the bids he received provided in mandatory, nondiscretionary terms that a bidder's size representation "will not be accepted by the contracting officer" if he knows that the SBA has previously determined that the bidder is large and has not subsequently recertified the bidder as small. 32 C.F.R. Sec. 1-703(b) (emphasis added). Choctaw's first letter to Suplee, protesting Rutter Rex's bid on Solicitation No. 315, drew Suplee's attention to this regulation and apprised him of the fact that the SBA had previously found Rutter Rex to be large and had not subsequently found it to be small. In essence, Choctaw was telling the contracting officer that Rutter Rex was on SBA's "black list" and that he was duty bound, under 32 C.F.R. Sec. 1-703(b), to reject Rutter Rex's representation that it was small, and thus its bid, as nonresponsive.
 
 
 37
 Suplee referred Choctaw's protest to the SBA, rather than automatically rejecting Rutter Rex's bid, apparently because the SBA's characterization of Rutter Rex as large was based on its determination that Rutter Rex's affiliate, Dauphine, was not small. Whether Rutter Rex was actually on the "black list," Suplee thought, was questionable. Suplee chose to have SBA answer the question, and he forwarded it to SBA's regional director in the form of a "size protest," as that term is defined by 13 C.F.R. Sec. 121.3-5. That regulation governs the method by which a bidder's competitor, or the contracting officer, may question a bidder's size status if the bidder has never received an SBA size determination or the SBA has determined it to be small. Section 121.3-5 does not apply where, as here, the questioned bidder has already been found by the SBA to be large; in that situation, 32 C.F.R. Sec. 1-703(b) requires the contracting officer automatically to reject its bid. In sum, SBA's regulations require the contracting officer to treat the bidder as large, even though it may, in fact, be small, until the SBA has determined the bidder to be small.[13]
 
 
 38
 The regional director's February 17 letter was in complete accord with this regulatory scheme. It informed Suplee that Rutter Rex fell within that category of firms that could not certify themselves as small without first obtaining SBA's approval. The letter stated that this was so even though Rutter Rex was deemed ineligible to self-certify as a result of a decision handed down in a size determination proceeding concerning its affiliate, Dauphine. The regional director pointed out, correctly, that a size protest hearing was not appropriate with respect to Solicitations Nos. 314 and 315; such hearings were accorded only to those firms not previously determined to be large. His statement that the SBA had no jurisdiction to process Choctaw's protest as a "size protest" logically followed.
 
 
 39
 The contracting officer's problem was merely one of "responsiveness"; Suplee had a duty under 32 C.F.R. Sec. 1-703(b) to reject, as nonresponsive, the representation by any bidder on SBA's "black list" that it was small. We thus reject the notion that the regional director's instruction somehow conferred upon Suplee the discretion to award the contracts in question to Rutter Rex. Moreover, absent a lawful reason[14] for delaying the letting of those contracts, Suplee was clearly obligated to award them to Choctaw.
 
 
 40
 We also reject the appellees' alternative argument that Suplee was free to disregard the regional director's letter of February 17 and to apply the Appeals Board's decision with regard to Solicitation No. 265 (Decision B) to Solicitations Nos. 314 and 315.[15] In Decision B, the Appeals Board held that its previous determination that Dauphine was not small should not apply to its affiliate, Rutter Rex; consequently, Rutter Rex was eligible to self-certify on Solicitation No. 265 and any future solicitations. Suplee, however, chose to apply that holding retrospectively to Solicitations Nos. 314 and 315. Read together, Decisions A and B plainly proscribed such retrospective use of Rutter Rex's new size determination. Accordingly, Suplee's application of Decision B to Solicitation Nos. 314 and 315 was a " 'clear and prejudicial violation of applicable ... regulations.' " Kinnett Dairies, 580 F.2d at 1270 (quoting Kentron Hawaii, Ltd., 480 F.2d at 1169).
 
 
 41
 32 C.F.R. Sec. 1-703(b)(4) provides that, if a party fails to appeal the regional director's decision within five days, it is "deemed to have waived its rights of appeal insofar as the pending procurement is concerned." (Emphasis added.) 13 C.F.R. Sec. 121.3-5(a) is to the same effect: "[a] protest received after the [five day] time limit[ ] ... shall not apply to the procurement ... in question." There is no dispute that Rutter Rex's appeal of the regional director's February 17 decision was untimely. Rutter Rex received the decision on February 24 and waited nearly one month, until March 21, to appeal. Consequently, Rutter Rex lost all rights with regard to Solicitation Nos. 314 and 315. To revive those rights by applying an SBA decision in a subsequent case would clearly violate these regulations.[16]
 
 
 42
 Moreover, allowing a firm to take advantage of an SBA decision in a separate proceeding, wholly unrelated to the procurement in question, would be manifestly unfair to that bidder's competitors; it would exponentially increase their burden to act as watchdogs for the SBA. They would not only be required to protest when such firm bid against them but also when it bid on contracts in which they had no interest. For, even if the appeal process had completely run its course with regard to the contracts they had bid, they might still lose out, as Choctaw did here, if the SBA, in a subsequent decision on an entirely different contract, concluded that the challenged firm was small. We are convinced that the SBA never envisioned such a scenario when it promulgated its regulations.[17] We therefore set aside Suplee's award of Solicitation Nos. 314 and 315 to Rutter Rex.[18] The only question remaining is whether we have the authority to require Suplee to award these contracts to Choctaw.
 
 C.
 
 43
 There is no question that a district court may "[e]njoin the performance of a [government] contract if the award was the result of procedures not comporting with the law." Sea-Land Service, Inc. v. Brown, 600 F.2d 429, 433 (3d Cir.1979); Delta Data Systems Corp. v. Webster, 744 F.2d 197 (D.C.Cir.1984); Superior Oil Co. v. Udall, 409 F.2d 1115 (D.C.Cir.1969). See Scanwell Laboratories, Inc. v. Shaffer, 424 F.2d 859, 864 (D.C.Cir.1970). A district court also has the authority to order a government contracting officer to award a contract to an unsuccessful bidder where it is clear that, but for the unlawful conduct of the contracting officer, the contract would have gone to the unsuccessful bidder. In determining whether it should exercise such authority, the court must consider several equitable factors, among them: whether the contract has already been awarded to another party and, if so, is being performed; the extent an order awarding the contract to the unsuccessful bidder is necessary to vindicate the interest of the public, and competing bidders, in the agency's adherence to the law; and the cost to the government, and hence to the taxpayers, of substituting an unsuccessful bidder for the successful bidder whose price may have been considerably lower. B.K. Instrument, Inc. v. United States, 715 F.2d 713, 727 (2d Cir.1983); Superior Oil Co., 409 F.2d at 1120-22.
 
 
 44
 Superior Oil Co. v. Udall provides a good example of when a district court is justified in ordering a contracting officer to award a contract to an unsuccessful bidder. In that case, the Department of the Interior sought bids for an oil and gas lease to several tracts of land owned by the United States. The Department's "Notice of Sale" called for "sealed bids" and provided that the lease be awarded to the highest qualified bidder. Id. at 1117. The applicable regulations stated that, "[f]ollowing the public opening of the sealed bids ..., the authorized officer, subject to his right to reject any and all bids will award the lease to the successful bidder." Id. at 1119. On the designated day, the Manager of the Department's Bureau of Land Management opened the nine bids submitted; the two highest bidders were, in order, Union Oil Co. and Superior Oil Co. The manager announced at the bid opening, however, that Union Oil's bid was " 'not an acceptable bid,' " because it " 'had not been signed' " by Union Oil as the Notice of Sale required, and that the lease would be given to Superior Oil. The Secretary of the Interior subsequently determined that Union Oil's bid was valid and awarded the lease to Union Oil. Superior Oil sought equitable relief in the district court, demanding that the court order the Department to award the contract to it as the "highest qualified bidder." The court granted Superior Oil that relief.
 
 
 45
 In affirming the district court's action, the District of Columbia Circuit concluded that the Manager of the Bureau of Land Management was the "authorized officer" to whom the regulations referred and that he had the sole authority to reject a particular bid. The Secretary therefore was powerless to correct his decision. The court of appeals acknowledged that the Secretary had the discretion to reject all bids by withdrawing the solicitation on the ground, for example, that to award the lease at that time would not be in the public interest. Id. at 1121. The Secretary had not, however, chosen to exercise this discretion. Rather, he had opted to accept Union Oil's bid and entered into a lease with it; had Union Oil not submitted a bid, the Secretary would have contracted with Superior Oil.
 
 
 46
 Superior Oil Co. presented the district court with a clear violation of law which required the cancellation of the government contract. Moreover, but for the violation, the plaintiff would have received the contract. The court had the authority to order that the contract be awarded to the plaintiff, and the relevant equities counseled that it exercise that authority. First, the challenged bidder and the government, though they had reached an agreement, had not materially changed their respective positions and no significant expense or disruption of a governmental function would have attended the substitution of the plaintiff for that bidder. Second, "the need to promote the integrity of the bidding process" outweighed the fact that such substitution would cost the government "approximately two million dollars more in immediate revenue" (because Superior Oil would be paying the government less than Union Oil for the lease).
 
 
 47
 Delta Data Systems Corp. v. Webster, supra, is an example of when the district court should not order the award of the contract to the unsuccessful bidder. In that case, Delta Data Systems Corp. alleged that the FBI had failed to abide by the regulations that controlled its treatment of bids it had solicited for the provision of several thousand computer terminals and related equipment over an eight-year period and that it should have been given the contract. The district court granted Delta Data full relief. The District of Columbia Circuit, on appeal, agreed that the FBI had violated the applicable regulations, but it refused to uphold the district court's injunction directing the contracting officer to award the contract to Delta Data. The court of appeals reached this result because there was no showing that, but for the FBI's noncompliance with the regulations, Delta Data would have been awarded the contract. The FBI, prior to selecting the contractor, had failed to accord Delta Data an opportunity to respond to certain information the FBI had obtained which indicated that Delta Data lacked the financial resources to perform the contract. The court noted that, even if Delta Data had been given a chance to respond, the FBI would not have been required to award it the contract; the FBI could have concluded, in the exercise of its discretion, that Delta Data was incapable of adequate performance.
 
 
 48
 The court of appeals observed that the case before it differed materially from that presented to it in Superior Oil Co. v. Udall. There, "the court was able explicitly to find that had the highest bidder [Union Oil] not entered the competition, Superior [Oil] 'would have been awarded th[e] lease' ... no such finding can be made in this case." Delta Data Systems Corp., 744 F.2d at 205.[19]
 
 
 49
 The instant case is on "all fours" with Superior Oil Co. v. Udall. Here, the contracting officer clearly violated the applicable procurement regulations; the plaintiff, Choctaw, would have received the contracts but for such violation; the successful bidder, Rutter Rex, has not commenced performance of the contracts in question; the substitution of contractors will cause insignificant disruption of the government's procurements; and the interest of the public, and those who bid for the agency's work, in the agency's compliance with the law outweighs the higher price the government will have to pay for the procurements.
 
 
 50
 The judgment of the district court is accordingly reversed, and the case is remanded for the entry of equitable relief not inconsistent with this opinion.
 
 
 51
 REVERSED and REMANDED with instructions.
 
 DUMBAULD, District Judge, concurring:
 
 52
 It would seem that the contracting officer Melvyn Suplee exercised the same sort of common sense as often occurs when an "inferior" federal court delays deciding a case until another case involving the same issue, known to be pending in the Supreme Court, has been there decided and an authoritative determination of the issue obtained.
 
 
 53
 However, as well explained in Judge Tjoflat's thorough and convincing opinion, the procurement process requires speedy determination and clearcut rules. Otherwise the troops in need of shirts (or shoes or munitions or whatever) might be left destitute like Washington's men at Valley Forge. Certainty rather than correctness is the controlling criterion. There will soon be other contracts to be awarded, and any change in the status of a contested bidder will apply to future awards.
 
 
 54
 Hence Rutter Rex (to whom Suplee awarded contracts Nos. 314 and 315) was ineligible to bid[1] at the time Suplee should have awarded those contracts, and thus he should have awarded them to plaintiff Choctaw.
 
 
 55
 I therefore join in the decision of the Court.
 
 
 
 *
 Honorable Edward Dumbauld, U.S. District Judge for the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 The district court concluded that the contracting officer's challenged action was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. Sec. 706(2)(A) (1982)
 
 
 [2]
 These regulations are now found at 13 C.F.R. Sec. 121.3-8 (1984) through 13 C.F.R. Sec. 121.3-16 (1984). Throughout this opinion we refer to the regulations published in the 1983 edition of the Code of Federal Regulations because they governed the actions of the parties in this case. The 1984 regulations did not change significantly any of the provisions pertinent here, and thus our analysis would be the same under either set of regulations
 
 
 [3]
 13 C.F.R. Sec. 121.3-5 provides that any "bidder, offeror or other interested party" may file a size protest. Because this case concerns a protest filed by a competing bidder, we refer throughout this opinion only to that party. We recognize, however, the right of an "offeror or other interested party" to protest under this regulation
 
 
 [4]
 A firm which the SBA has determined not to be small may seek an SBA determination that it has become small by applying to the regional director. Its application must be accompanied by information necessary to show a significant change in the firm's ownership, management, contractual relations, or other factors bearing on its size. The firm may appeal the regional director's disposition of its application to the Size Appeals Board. 13 C.F.R. Sec. 121.3-4. See infra note 7
 
 
 [5]
 There are two situations in which the contracting officer must forward the matter to the SBA for a size determination: first, if the SBA has never determined the size status of the bidder; second, if the SBA has previously found the bidder to be small, but the protester claims that, in the interim, the bidder has become large
 
 
 [6]
 The contracting officer is required to forward a size protest to the SBA regional director whose office serves the geographical area in which the principal office of the "protested concern" is located. 13 C.F.R. Sec. 121.3-5
 
 
 [7]
 This Board has since been renamed the Office of Hearing and Appeals. 13 C.F.R. Sec. 121.3-6 (1984). See supra note 2
 
 
 [8]
 "Responsiveness" is defined at 32 C.F.R. Sec. 2-301. That section provides:
 2-301. Responsiveness of Bids.
 (a) To be considered for award, a bid must comply in all material respects with the invitation for bids so that, both as to the method and timeliness of submission and as to the substance of any resulting contract, all bidders may stand on an equal footing and the integrity of the formal advertising system may be maintained.
 It is the duty of the contracting officer to determine whether a bid is "responsive."
 
 
 [9]
 Although the regional director initially processed Gulf's protest as a "size protest" under 13 C.F.R. Sec. 121.3-5, he concluded, as he had with Choctaw's "protest," that he was without jurisdiction to process such a protest under 13 C.F.R. Sec. 121.3-5 because of the SBA's previous determination that Dauphine, Rutter Rex's affiliate, was not small
 
 
 [10]
 In its complaint, Choctaw prayed for injunctive relief. Section 10 of the Administrative Procedure Act, 5 U.S.C. Sec. 702 (1982), requires that any "mandatory or injunctive relief shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance." In light of this provision, Choctaw should have joined, as a party defendant, Melvyn Suplee, the officer responsible for letting the particular contracts in question and the party against whom any injunctive relief should issue. Because the appellees have not objected to the nonjoinder of Suplee, we deem this objection waived and feel at liberty to provide for the entry of injunctive relief against the individual appellees who are Suplee's superiors
 
 
 [11]
 As the District of Columbia Circuit observed in Scanwell Laboratories, Inc. v. Shaffer, 424 F.2d 859 (D.C.Cir.1970), section 10 of the APA, when enacted, was declaratory of the existing case law on standing. The courts have continued to construe it thusly. See, e.g., Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 153-54, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970); Barlow v. Collins, 397 U.S. 159, 164, 90 S.Ct. 832, 836, 25 L.Ed.2d 192 (1970)
 
 
 [12]
 In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. We therefore refer to such precedent as if it had been decided by the Eleventh Circuit
 
 
 [13]
 See supra note 4
 
 
 [14]
 We recognize that, even after the contracting officer determines which firm is the low responsive and responsible bidder, the agency can still reject all bids if it determines that rejection is in the "public interest." 10 U.S.C. Sec. 2305 (1982). It is apparent from Suplee's testimony below that the Department of Defense had not chosen to reject all the bids on Solicitation Nos. 314 and 315 and, further, that it would have awarded the contracts to Choctaw had it been the low bidder. Accordingly, there would have been no "lawful" reason for Suplee's failure to award contracts on Solicitation Nos. 314 and 315 to Choctaw
 
 
 [15]
 Again, the appellees urge us to apply an abuse of discretion standard of review to this decision by Suplee. Because the regulations gave Suplee no discretion to apply Decision B to Solicitation Nos. 314 and 315, we reject that standard in favor of the one we apply above, to wit, whether the contracting officer's conduct resulted in a "clear and prejudicial violation of the applicable statutes or regulations."
 
 
 [16]
 We also reject appellees' argument that Suplee was free to apply the holding of Decision B to Solicitation Nos. 314 and 315 because the regional director's February 17 letter was not a "final" SBA determination, appealable to the Appeals Board, but only informal advice that the contracting officer was free to accept or reject. The Appeals Board only has jurisdiction to consider appeals taken from a formal opinion of the regional director; it has no jurisdiction to consider an appeal taken from any informal advice he may give. 13 C.F.R. Sec. 121.3-6. The fact that the Appeals Board found that it had jurisdiction to consider Rutter Rex's appeal taken from the regional director's decision on Solicitation No. 265 defeats appellees' argument
 The regional director's treatment and disposition of Gulf's protest on Solicitation No. 265 was, in all pertinent respects, exactly the same as it had been on Solicitations Nos. 314 and 315. The regional director found that, even though the protest had initially been filed as a "size protest," under 13 C.F.R. Sec. 121.3-5, the protest could not be processed as a "size protest," because such a protest proceeding was not then appropriate. See supra note 9. The fact that Rutter Rex took an appeal from the regional director's decision on Solicitation No. 265 and, in that appeal, attempted to obtain review of his decision on Solicitation Nos. 314 and 315 is evidence that it, too, recognized the finality and appealability of both decisions.
 
 
 [17]
 Appellees, in their arguments to us, suggest that the contracting officer's actions in applying Decision B retrospectively to Solicitation Nos. 314 and 315 could be characterized as an agency interpretation of a regulatory scheme and thus should be given great deference. We are not persuaded. We, of course, recognize that courts have tended to accord agency interpretations considerable deference. See Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965) ("[w]hen the construction of an administrative regulation rather than a statute is in issue, deference is even more clearly in order"); M. Steinthal & Co. v. Seamans, 455 F.2d 1289, 1300-06 (D.C.Cir.1971). This has been particularly true where the agency's interpretation is based on quasi-technical expertise or long experience with a complex and comprehensive regulatory scheme. Allen M. Campbell Co. General Contractors, Inc. v. Lloyd Wood Construction Co., 446 F.2d 261, 265 (5th Cir.1971). Courts have not deferred to agency decisions, however, when the question under review is well within the competence of the reviewing court, Superior Oil Co. v. Udall, 409 F.2d 1115, 1119 (D.C.Cir.1969); see also Hi-Craft Clothing Co. v. NLRB, 660 F.2d 910, 915 (3d Cir.1981), or where there is strong public interest " 'in having the agencies follow the regulations which control government contracting.' " Hayes International Corp. v. McLucas, 509 F.2d 247, 258 (5th Cir.1975) (quoting M. Steinthal & Co. v. Seamans, 455 F.2d 1289, 1300 (D.C.Cir.1971)). Moreover, the Supreme Court has admonished the federal courts not to "stand aside and rubberstamp ... administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." NLRB v. Deauville Hotel, 751 F.2d 1562, 1567 (11th Cir.1985) (quoting NLRB v. Brown, 380 U.S. 278, 291-92, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965)); American Ship Building Co. v. N.L.R.B., 380 U.S. 300, 318, 85 S.Ct. 955, 967, 13 L.Ed.2d 855 (1965) ("[t]he deference owed to an expert tribunal cannot be allowed to slip into a judicial inertia ..."). See also Hi-Craft Clothing Co. v. N.L.R.B., 660 F.2d at 915 ("[b]lind acceptance of agency 'expertise' is not consistent with responsible review")
 We are cognizant of the judiciary's hesitancy to interfere with agency interpretations of procurement statutes and regulations. This hesitancy is based on the desire to avoid, as much as possible, the disruption of government procurement of often vital supplies and the courts' appreciation of the complex regulatory procurement schemes sometimes involved. Kinnett Dairies, 580 F.2d at 1270-71; Hayes International Corp., 509 F.2d at 258. These considerations are not, however, weighty here. First, judicial review of the contracting officer's decision will not unduly disrupt the government's procurement. Second, the scheme under review does not require any particular technical expertise to comprehend, is not excessively complicated, and is not ambiguous. In short, the regulatory interpretations this case presents are within the competency of the judicial branch to make. Cf. Superior Oil Company v. Udall, 409 F.2d 1115, 1119 (D.C.Cir.1969). Finally, this case involves a situation where the public, and, in particular, small businesses bidding on contracts set aside for small businesses, have a strong interest " 'in having agencies follow the regulations which control government contracting.' " Hayes International Corp., 509 F.2d at 258 (quoting M. Steinthal & Co. v. Seamans, 455 F.2d at 1300). As Chief Justice Burger (then Circuit Judge) pointed out in Superior Oil Co., 409 F.2d at 1119, the public and these bidders have a strong interest in certainty in the bidding process and the sure and swift award of bids. To achieve this certainty, strict adherence to the procedures for bidding is a necessity. We therefore do not hesitate to review the contracting officer's interpretation of the regulatory scheme that governed his conduct here.
 
 
 [18]
 The appellees do not contend that Choctaw has an adequate legal, as opposed to equitable, remedy. We therefore do not consider the point in disposing of this appeal
 
 
 [19]
 Delta Data Systems Corp. makes it clear that, contrary to appellees' suggestion, Superior Oil Co. is still good law in the District of Columbia Circuit, despite dicta in Scanwell Laboratories, Inc. v. Shaffer, 424 F.2d 859, 864, 869 (D.C.Cir.1970), that may have suggested otherwise
 We also conclude that appellees' reliance on Sea-Land Service, Inc. v. Brown, 600 F.2d 429 (3d Cir.1979), is misplaced. In that case, the Navy cancelled a "negotiated" contract it had given to Sea-Land and required Sea-Land and its competitor, Foss Alaska Line, to rebid the job. Sea-Land sued, seeking specific performance of its cancelled contract and, after the Navy awarded the contract to Foss, an order enjoining the performance of that contract. The Third Circuit, reversing the district court's grant of declaratory and injunctive relief, held that the Tucker Act, 28 U.S.C. Sec. 1491 (1982), precluded the district court from granting specific performance of Sea-Land's contract and that the APA could not provide the basis for equitable relief because the Navy had not abused its discretion. Sea-Land Service, Inc. is clearly inapposite. A disappointed bidder, such as Choctaw, seeking the termination of a government contract with one party and the award of that contract to it, is not deemed to be making a claim for specific performance. The Tucker Act is, therefore, not implicated, and the court can fashion whatever equitable relief may be appropriate. B.K. Instrument, Inc. v. United States, 715 F.2d 713, 726-28 (2d Cir.1983); Megapulse, Inc. v. Lewis, 672 F.2d 959, 969 (D.C.Cir.1982).
 
 
 [1]
 And had not taken a timely appeal to review its status insofar as those contracts were concerned