**MARSHALL DURBIN COMPANY OF JASPER, INC.; Earl Forrester, Plaintiffs-Appellants,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; William D. Ruckelshaus; Charles R. Jeter; Alabama Department of Environmental Management; Joe B. Broadwater; William T. Manasco; Jasper Utilities Board, Defendants-Appellees.**

No. 85–7331.

United States Court of Appeals, Eleventh Circuit.

May 9, 1986.

C. Lee Reeves, Sirote, Permutt, Friend, Friedman, Held & Apolinsky, Birmingham, Ala., R. Sarah Compton, McDermott, Will & Emery, Kurt J. Olson, Daniel C. Beckhard, Washington, D.C., for plaintiffs-appellants.

Arthur E. Gowran, Robert L. Klarquist, Appellate Section, U.S. Dept. of Justice, Land & Natural Resources Div., Washington, D.C., for defendants-appellees.

Olivia Hardy Hudgins, Montgomery, Ala., for Alabama Dept. of Environmental Management, Joe Broadwater & William T. Manasco.

Frank W. Donaldson, U.S. Atty., Herbert J. Lewis, III, Asst. U.S. Atty., Birmingham, Ala., for U.S. defendant-appellee.

Edward R. Jackson, Jasper, Ala., for Jasper Utilities Board.

Before GODBOLD, Chief Judge, ANDERSON, Circuit Judge, and ATKINS *, Senior District Judge.

GODBOLD, Chief Judge:

Plaintiff Durbin Company operates a chicken processing plant in Jasper, Alabama, that discharges wastewater into the Jasper publicly-owned treatment works ("plant"). Plaintiff Forrester is a resident of Jasper whose residence is connected to the Jasper sewer system, which discharges wastewater into the Jasper plant. Each plaintiff is charged a user fee by the Jasper Utilities Board.

The Jasper plant is regulated by the Environmental Protection Agency under the Federal Water Pollution Act (Clean Water Act), 33 U.S.C. §§ 1251–1376. Pursuant to the National Pollutant Discharge Elimination System (NPDES) established by the

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

Clean Water Act, the EPA or the designated state issues NPDES permits to local treatment works and thereby sets limits on the pollutant loadings of the particular plant effluent that is discharged into receiving waters.

EPA issued an NPDES permit establishing stringent effluent limitations for the Jasper plant. The Board decided to upgrade the plant to comply with these standards and applied for federal funds to help finance the construction.

EPA awarded $5.4 million to the Board to fund the project. Under the statutory scheme at that time, the federal government would provide 75% of the funds necessary for construction and the Board the remaining 25%.

Plaintiffs brought this suit seeking declaratory and injunctive relief to prevent disbursal by EPA or the Alabama Department of Environmental Management of the federal funds awarded to the Board, alleging, *inter alia,* that defendants had violated the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706. After a hearing, the district court dismissed the complaint holding that plaintiffs lacked standing to sue. Plaintiffs have withdrawn their appeal as to the state defendants (the Department of Environmental Management, Jeter, Broadwater and Manasco). We affirm.[1]

■ To establish standing under the APA a plaintiff must allege that the challenged agency action has caused him "injury in fact." *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); *Choctaw Manufacturing Co., Inc. v. U.S.,* 761 F.2d 609, 615 (11th Cir.1985). The relevant inquiry is whether, assuming justiciability of the claim, the plaintiff has shown an injury to himself that is likely to be redressed by the requested relief. *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1975); *Steele v. National*

*Firearms Act Branch,* 755 F.2d 1410, 1414 (11th Cir.1985).

■ The complaint alleged that plaintiffs would suffer economic injury because user rates would be increased in order to fund the Board's share of the cost of expanding the plant. Plaintiffs would like to prevent a rate increase by eliminating the expansion of the plant, and they proposed to eliminate expansion by enjoining the disbursement of federal funds. But there is a missing link. The decision to expand the plant is not necessarily dependent upon the disbursement of federal funds. The Board could decide to build the plant without the federal grant, and if it did so, it would be required to pay for 100% rather than 25% of the cost of the expansion. This increased cost presumably would be passed on by the Board to ratepayers, including plaintiffs. Because of this possibility the district court noted that an injunction might actually cause plaintiffs greater harm.

The complaint does not allege that the new plant would not be built without disbursal of the federal funds. Therefore, even if plaintiffs are correct in predicting that expansion of the plant will cause a rate increase, they have not established that their injury—an increase in rates—is likely to be redressed by barring the federal funds, which is the relief they have requested. This case is like *Simon v. Eastern Kentucky Welfare Rights Organization.* In *Simon* indigent plaintiffs alleged that an Internal Revenue Service policy extending favorable tax treatment to hospitals that did not serve indigents to the extent of the hospitals' financial ability encouraged hospitals to deny services to indigents. The Supreme Court held that although the plaintiffs had suffered actual injury in being denied access to hospital services, they had failed to establish that the actions of the defendants, officials of the Department of the Treasury, had caused the injury. The Court noted that a requirement that all hospitals serve indi-

---

**1.** Since plaintiffs lack standing, we do not address the contention of the defendants that the case is moot because of progress made in the actual construction work at the plant.

gents as a condition of favorable tax treatment would not necessarily result in increased access of indigents to hospital services; hospitals to which indigents might apply could elect to forego favorable tax treatment to avoid the financial drain of an increase in the level of uncompensated services.

To recap, assuming that plaintiffs here will be injured (by a rate increase imposed because of plant expansion), as in *Simon* the relief they seek will not necessarily remedy that injury by causing user rates to remain at their current level. They, therefore, have no standing.

AFFIRMED.