934 F.2d 266
 37 Cont.Cas.Fed. (CCH) 76,124
 MARK DUNNING INDUSTRIES, INC., Plaintiff-Appellee,
v.
Richard B. CHENEY, Secretary of Defense; Michael P.W.
Stone, Secretary of the Army; Henry G. Victor,
Jr., Contracting Officer, Ft. Polk,
Louisiana, Defendant-Appellee,
Reliable Trash Service Co. of Md., Inc.,
Intervenor/Cross-Claimant-Appellant.
 Nos. 90-7065, 90-7124.
 United States Court of Appeals,
Eleventh Circuit.
 June 19, 1991.
 
 Dennis R. Pierson, George L. Beck, Jr., Montgomery, Ala., Alex Boskoff, Potomac, Md., for intervenor/cross-claimant-appellant.
 James Eldon Wilson, U.S. Atty., Kenneth E. Vines, Asst. U.S. Atty., Montgomery, Ala., William D. Coleman, James H. McLemore, Capell, Howard, Knabe & Cobbs, P.A., Montgomery, Ala., D. Lee Roberts, Jr., Smith, Currie & Hancock, Atlanta, Ga., David P. Carey, Dept. of the Army, Litigation Div., Office of the Judge Advocate Gen., Washington, D.C., for appellees.
 Appeal from the United States District Court for the Middle District of Alabama.
 Before POWELL*, Associate Justice, TJOFLAT, Chief Judge, and KRAVITCH, Circuit Judge.
 PER CURIAM:
 
 
 1
 At issue in this case is a United States Army refuse collection and disposal contract for Fort Polk, Louisiana. When the Army solicited bids for this contract, it allowed contractors to submit bids based on alternative specifications, reflecting two different waste disposal arrangements that were acceptable to the Army. Mark Dunning Industries, Inc. (Dunning) submitted a bid based on one set of specifications; Reliable Trash Service Company of Maryland, Inc. (Reliable) submitted a bid based on the other. In early 1989, the Army contracting officer for Fort Polk awarded the contract to Dunning, which had submitted the lowest bid. Reliable filed a protest to this award with the General Accounting Office (GAO), arguing that the alternative contract specifications, pursuant to which it submitted its bid, were unfair and precluded it from presenting the lowest bid. The GAO agreed, and recommended that the Army terminate for convenience the contract with Dunning and award the contract to Reliable.[1]
 
 
 2
 Asserting that the contracting officer, although he had not yet followed the GAO's recommendation, intended to terminate the Army's contract with Dunning, Dunning asked the district court to enjoin defendants Richard P. Cheney (the Secretary of Defense), Michael P.W. Stone (the Secretary of the Army), and Henry G. Victor, Jr. (the Army contracting officer for Fort Polk) from cancelling the contract. The defendants moved to dismiss the case, contending that the district court had no subject-matter jurisdiction over Dunning's claim; under the Tucker Act, 28 U.S.C. Secs. 1346, 1491 (1988), and the Contract Disputes Act of 1978, 41 U.S.C. Secs. 601-613 (1988), Dunning could prosecute its claim only in the United States Claims Court or with the agency's board of contract appeals. The district court, on October 20, 1989, held that it had no subject-matter jurisdiction and denied Dunning's request for injunctive relief without reaching the merits of Dunning's claim. Inexplicably, however, the court did not immediately dismiss the case; instead, it deferred its decision on whether to dismiss the case until November 1, 1989.
 
 
 3
 On October 21, 1989, the Army terminated for convenience Dunning's contract and gave the job to Reliable. Dunning promptly renewed its request for injunctive relief. It asked the court to order the defendants to terminate the Army's new contract with Reliable and to require the defendants either to honor the original contract or, alternatively, to resolicit bids. The defendants, in response, asked the court, once again, to dismiss the case for want of subject-matter jurisdiction.
 
 
 4
 On November 7, 1989, the district court, 726 F.Supp. 810, citing Choctaw Manufacturing Co. v. United States, 761 F.2d 609, 621 n. 19 (11th Cir.1985), held that it had subject-matter jurisdiction over the portion of Dunning's claim that challenged the defendants' decision to award the contract to Reliable rather than resoliciting bids. Then, turning to the merits of this aspect of Dunning's claim, the court held that the defendants had improperly awarded the contract to Reliable in violation of the Armed Services Procurement Act, 10 U.S.C. Sec. 2305 (1988); consequently, it ordered the defendants to vacate the award and directed them to determine whether Dunning had been prejudiced by the manner in which the Army had framed the original specifications. If Dunning had been prejudiced--if its bid would have been lower than Reliable's and, therefore, successful--the defendants would be required to resolicit bids; if not, the defendants could give the contract to Reliable.
 
 
 5
 After the district court entered this order, Reliable moved to intervene as a defendant and cross-claimant. It asked the court to dissolve the injunction, to declare its contract with the Army valid, to order the defendants to honor that contract, and to give it any other relief to which it was entitled. Before the court could rule on Reliable's motion to intervene, Dunning and the defendants entered into a settlement agreement. Pursuant to this agreement, the defendants announced their intention to terminate for convenience the Army's contract with Reliable and to resolicit bids on the contract. Because the defendants had settled the case and agreed to resolicit bids, they avoided the necessity of determining, pursuant to the district court's November 7, 1989 order, whether Dunning had been prejudiced or of appealing that order.
 
 
 6
 Pursuant to this settlement agreement, Dunning and the defendants jointly asked the district court to vacate its order of November 7, 1989. The court did so on January 4, 1990. That same day, the court granted Reliable's motion to intervene as defendant and cross-claimant; it denied, though, Reliable's motion for injunctive relief. On February 7, 1990, the court dismissed, as moot, Dunning's claim against the original defendants; the only remaining claim, according to the court, was Reliable's contention that the Army had improperly exercised its right to terminate for convenience its contract with Reliable. The court dismissed this claim for want of subject-matter jurisdiction.
 
 
 7
 Reliable contends, on appeal, that the district court erred when it issued its November 7, 1989 order finding subject-matter jurisdiction over a portion of Dunning's claim and directing the defendants to terminate Reliable's contract. It also contends that that court erred in dismissing its claim for lack of subject-matter jurisdiction. We find, as did the district court, that with the vacation of the November 7, 1989 order and the dismissal, as moot, of Dunning's claims against the original defendants, Reliable's only remaining claim was that the Army improperly terminated its contract for convenience.[2] 2] The question before us, therefore, is simple and straightforward: did the district court have subject-matter jurisdiction over this claim?
 
 
 8
 We hold that it did not. The Tucker Act, 28 U.S.C. Sec. 1346(a)(2), and the Contract Disputes Act of 1978, 41 U.S.C. Secs. 602(a), 607(g)(1), 609(a)(1), provide that the United States District Courts have no jurisdiction over suits against the United States founded on contracts with the United States. Instead, contractors may bring such suits only in the United States Claims Court, 28 U.S.C. Sec. 1491; 41 U.S.C. Sec. 609, or with the agency's board of contract appeals, 41 U.S.C. Secs. 606, 607.[3] This circuit has not directly addressed whether a district court has subject-matter jurisdiction when a contractor claims that the government improperly terminated its contract and asks the district court to enforce that contract. In Choctaw Manufacturing Co. v. United States, 761 F.2d 609, 621 n. 19 (11th Cir.1985), however, we found subject-matter jurisdiction over a claim brought by a "disappointed bidder ... seeking the termination of a government contract with one party and the award of that contract to it"; we distinguished that claim from "a claim for specific performance," over which district courts have no jurisdiction. Cf. Alabama Rural Fire Ins. Co. v. Naylor, 530 F.2d 1221 (5th Cir.1976) (district court has no subject-matter jurisdiction over action challenging government's termination of contract).[4] Moreover, the District of Columbia Circuit, addressing a similar claim, found that the district court had no subject-matter jurisdiction over a contractor's challenge to the government's decision to terminate for convenience its contract and to resolicit bids. See Ingersoll-Rand Co. v. United States, 780 F.2d 74 (D.C.Cir.1985); see also B.K. Instrument, Inc. v. United States, 715 F.2d 713, 727-28 (2d Cir.1983) ("an action seeking specific performance of a contract with the Government may not be brought in a district court"); Sea-Land Serv., Inc. v. Brown, 600 F.2d 429, 432-33 (3rd Cir.1979) (district court had no jurisdiction to order government to perform contract with plaintiff).
 
 
 9
 We hold that the district court had no subject-matter jurisdiction over Reliable's claim that the Army improperly terminated its contract. Accordingly, we AFFIRM, without prejudice to Reliable's claims in the United States Claims Court, the district court's decision dismissing Reliable's complaint.
 
 
 10
 AFFIRMED.
 
 
 
 *
 Honorable Lewis F. Powell, Jr., Associate Justice of the United States Supreme Court, Retired, sitting by designation
 
 
 [1]
 A termination for convenience clause, which is common in contracts to which the United States is a party, allows the government "to terminate a contract, even in the absence of fault or breach by the other party, without incurring the usual financial consequences of breach." Stock Equip. Co., A Unit of Gen. Signal Corp. v. TVA, 906 F.2d 583, 586 n. 3 (11th Cir.1990). When the government terminates for convenience, it reimburses the contractor for "costs incurred, profit on work done and the costs of preparing the termination settlement proposal." Id. The termination for convenience clause prescribed by federal regulation and incorporated into the Army's contract with Dunning stated, in part, that "[t]he Government may terminate performance of work under this contract ... if the Contracting Officer determines that a termination is in the Government's interest." See 48 C.F.R. Secs. 49.502(b)(1)(i), 52.249-2 (1990)
 
 
 [2]
 Reliable argues that its remaining claim is not limited to a challenge to the Army's termination for convenience of its contract. Instead, it contends, it is raising a constitutional claim: that it was an indispensable party to the suit between Dunning and the defendants, see B.K. Instrument, Inc. v. United States, 715 F.2d 713, 730-31 (2d Cir.1983); that the district court, therefore, erred by not requiring it to be joined in that suit; and that when the district court entered its order of November 7, 1989 terminating Reliable's contract without giving Reliable an opportunity to participate in the case, the court deprived Reliable of due process, see 7 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 1602, at 21-22 (2d ed. 1986). The district court, however, has vacated its November 7 order and dismissed, as moot, Dunning's claim. It therefore entered no order that affected Reliable or deprived it of any interest
 Reliable argues, though, that the district court's November 7 order caused the defendants to settle with Dunning--i.e., that but for this order (which, it contends, deprived it of due process), the Army would never have terminated for convenience its contract. In essence, this claim is simply that the Army improperly terminated for convenience; Reliable's remedy, as the discussion below indicates, lies with the claims court.
 
 
 [3]
 The district courts may, however, hear contract claims against the Tennessee Valley Authority. 41 U.S.C. Sec. 609(a)(2)
 
 
 [4]
 In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981