See also, 1995 WL 361790.

## McKNIGHT CONSTRUCTION COMPANY, INC.,
### Plaintiff,

v.

**William J. PERRY, Secretary of Defense, Togo D. West, Jr., Secretary of the Army, and Robert C. Hoffman, Contracting Officer, U.S. Army Corps of Engineers, Savannah District, Defendants,**

**Conner Bros. Construction Co., Inc.,[1] Defendant–Intervenor.**

No. CV194–188.

United States District Court, S.D. Georgia, Augusta Division.

Dec. 23, 1994.

---

1. Conner Bros. Construction Co., Inc. (Conner Brothers) seeks to intervene pursuant to Rule 24(a)(2), Fed.R.Civ.P., which provides for intervention as a matter of right. Conner Brothers' interest in the outcome of this litigation is self-evident. To ensure adequate representation of that interest, Conner Brothers must be joined as a Defendant. No party in interest objects to Conner Brothers' intervention. Conner Brothers' Motion to Intervene is therefore GRANTED. Conner Brothers Construction Company, Inc. is hereby added as a Defendant in this case.

Karl Dix, Jr., Smith, Currie & Hancock, John B. Long, Dye, Tucker, Everitt, Wheale & Long, Augusta, GA, for plaintiff.

Melissa Stebbins Mundell, Savannah, GA, for defendants.

Robert D. Marshall, Griffin, Cochrane & Marshall, Atlanta, GA, for intervenor-defendant.

### ORDER

BOWEN, District Judge.

The Plaintiff, McKnight Construction Company, Inc. (McKnight Construction), moves the Court for an injunction barring the Defendants from implementing and administering a federal construction contract awarded to Conner Brothers. Plaintiff's motion came on for hearing on December 12, 1994. Based on the evidence presented at the hearing and applicable authorities, Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction is GRANTED. The Court enters its findings pursuant to Rule 65(d), Fed.R.Civ.P., as follows.

On May 17, 1994, the U.S. Army Corps of Engineers, Savannah, Georgia, District (hereafter "the Corps"), issued invitation for bids (IFB) No. DACA21–94–B–0059, soliciting bids for the renovation of Army barracks at Kelly Hill, Fort Benning, Georgia. The bid schedule included 10 bid line items for an aggregate base bid plus one additive.[2] The Corps received four bids on June 20, 1994:

|  | Base Bid | Base Bid Plus Add. 1 |
| --- | --- | --- |
| McKnight Construction | $16,707,000.00 | $16,850,000.00 |
| Conner Brothers | 16,698,000.00 | 16,969,000.00 |
| Dawson Const. Co. | 16,938,000.00 | 17,213,000.00 |
| Wright Assoc., Inc. | 17,014,700.00 | 17,298,422.00 |
| Government's estimate | 17,440,834.00 | 18,115,491.00 |

McKnight Construction was the apparent low bidder, by $119,000. A copy of the bid abstract showing the four lowest bidders and the Government's estimate of costs by bid line items is appended to this Order.

Plaintiff's president, William Davis McKnight, prepared and submitted its bid.

In completing the bid form, McKnight transposed his bids for line items one and two with bid line items four and five. Because of dramatic differences in costs associated with bid line items one and two compared to four and five, the mistake is obvious from a cursory inspection of the bid form, as well as the bid abstract.[3] He allocated excessively high costs to bid line items one and two and very low figures to bid line items four and five, compared to the other contractors' submissions.

By letter dated June 21, 1994, Conner Brothers, the next lowest bidder, informed the Corps that McKnight Construction's bid was unbalanced and requested that it be rejected. Upon discovering the mistake on June 22, McKnight Construction contacted the Corps by telephone to apprise it of the mistake. The asserted basis for the mistake was that the unit prices for bid line items one and two were transposed with bid line items four and five. Plaintiff sent the Corps a letter to this effect via facsimile on June 23, 1994, requesting permission to correct its bid to reflect the intended allocation of bid line items; its base bid would be unchanged.

On June 24, 1994, the Corps received another letter from McKnight Construction, reiterating the transpositional nature of its mistake and requesting permission to correct the mistake. Counsel included with the June 24, 1994, letter copies of Mr. McKnight's original bid working papers and his sworn affidavit. The various notations and computations shown in Mr. McKnight's bid work papers do not identify bid items or individual buildings; it is virtually impossible to determine the intended allocation of bid line items from McKnight's bid work papers. McKnight's affidavit explains that he simply transposed bid line items one and two with four and five.[4] On June 28, 1994, McKnight

---

**2.** The bid schedule actually comprised 29 bid items, broken down into a base bid and separate additives. Sufficient funds were available, however, for award on only the base bid and additive no. 1.

**3.** Bid line item one entails asbestos abatement in three buildings, buildings 9006, 9007 and 9024 at Kelly Hill. Bid line item two involves the demolition of building 9024. Bid line item four

involves the inter demolition and renovation of Building 9006. Bid line item five involves the inter demolition of Building 9007.

**4.** Mr. McKnight avers as follows in his affidavit:

In completing the line item prices for the individual items, I noticed that the first item concerned Building 9006. I mistakenly assumed that the first two bid items would represent the demolition and renovation of Build-

Construction's lawyer again wrote the Corps regarding the mistake and tendered McKnight's "post-bid opening" worksheets wherein he purports to "reconstruct" his thought processes relative to the allocation of bid line items.

The Corps' contracting officer, Defendant Robert C. Hoffman, determined that McKnight Construction's request to correct its bid should be denied. On June 28, 1994, the Corps, through its Division Commander, denied Plaintiff's request to correct. The Corps found that while there was clear and convincing evidence of a mistake in the bid, there was not clear and convincing evidence of Plaintiff's intended allocation among bid line items. (*See* Admin.Rec. Exh 3, Tab D.)

On June 29, 1994, McKnight Construction received notice that its request for correction had been denied. On July 1, 1994, McKnight Construction filed with the General Accounting Office its protest of the Corps' decision to reject its bid. On November 7, 1994, the Comptroller General denied McKnight's protest. *Matter of McKnight Construction Company, Inc.*, B–257782 (C.G.1994).

McKnight Construction filed this lawsuit on December 2, 1994, seeking judicial review of the Corps' decision to reject its bid. The Court's subject matter jurisdiction is unchallenged. *See* 28 U.S.C. § 1331, 31 U.S.C. § 3556. Section 702, 5 U.S.C., confers standing on McKnight Construction to challenge the Corps' interpretation and application of the Federal Acquisition Regulations in connection with this procurement. Notice to proceed with performance of the contract has been withheld from Conner Brothers pending final resolution of Plaintiff's protest.

The Federal Acquisition Regulations require that contracts be awarded to the lowest responsible bidder.[5] *See* 48 C.F.R. § 14.103–2. A bid may be rejected by the contracting officer, however, if "the prices for any line items ... are materially unbalanced." *Id.*, § 14.404–2(g). That McKnight Construction's submitted bid was materially unbalanced due to the erroneous allocation of bid line items is undisputed. *See id.*, § 15.814. At issue in this declaratory judgment action is whether correction of the bid should have been allowed. *See id.*, § 14.406–3.

■ A preliminary injunction is drastic equitable relief. To prevail on its Motion, McKnight Construction must clearly demonstrate: (1) a substantial likelihood of success on the merits; (2) that it will be irreparably injured if the injunction does not issue; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause an opposing party; *and* (4) that an injunction would be in the public interest.

### Likelihood of Success

■ Plaintiff's assertions are not evaluated as if made to this Court in the first instance. The District Court is not the agency vested with authority under the Federal Acquisition Regulations to make determinations concerning alleged bidding errors, *see* 48 C.F.R. § 14.406–3(e); that authority was delegated in this case to the Division Commander of the Corps. The judicial review to which Plaintiff is entitled is of the Corps' decision making process. Under the Admin-

---

ings 9006 and 9007 which represented a substantial amount of the work for this Project. Therefore, I wrote $4,203,500 on the bid form in the unit price column for bid items 1 and 2. For the asbestos abatement and demolition of Building 9024, I wrote $250,000 in the unit price column for bid items 4 and 5. I was allocating these amounts in completing the bid form minutes before bid opening and was under extreme time pressure and was rushed.

I actually intended to quote a price of $4,203,500 for bid items 4 and 5 which was for the interior demolition and renovation of Buildings 9006 and 9007. I also intended to quote prices of $250,000 each for line item Nos. 1 and 2 which was for the asbestos abatement in Buildings 9006, 9007, and 9024 and

the demolition of Building 9024 respectively. McKnight's total base bid was exactly equal to the price which was intended as confirmed by my worksheets and my statement that I am providing in this Affidavit.
(Exh. 2 of Pl.'s Ver. Compl., McKnight aff. ¶¶ 13–14.)

5. Whether a bidder is "responsible" concerns the bidder's ability to satisfy the contractual commitments encompassed in its bid. *See* 48 C.F.R. § 9.104–1. The Corps' decision to reject McKnight Construction's bid was not based on a determination that the company failed to qualify as a "responsible" bidder.

istrative Procedure Act, 5 U.S.C. §§ 701, et seq., an executive agency's action may be set aside if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" *Id.*, § 706(2)(A). *See Choctaw Mfg. Co., Inc. v. United States,* 761 F.2d 609, 616 (11th Cir.1985). The Defendants are correct that this standard of review effects a demanding burden upon a disappointed bidder protesting an executive agency's procurement decision. Additionally, Plaintiff must overcome the Court's reluctance to take judicial action intrusive into executive procurement matters.

■ In reviewing the Corps' action, the considerable experience of the Corps and the Comptroller in applying federal procurement regulations merits respect and appropriate deference. *See generally Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Choctaw,* 761 F.2d 609; *Shoals American Industries, Inc. v. United States,* 877 F.2d 883 (11th Cir.1989). Blind deference would be inimical to responsible judicial review, however. *See Hi–Craft Clothing Co. v. N.L.R.B.,* 660 F.2d 910, 915 (3d Cir.1981); *see also American Ship Bldg. Co. v. N.L.R.B.,* 380 U.S. 300, 318, 85 S.Ct. 955, 967, 13 L.Ed.2d 855 (1965) ("The deference owed to an expert tribunal cannot be allowed to slip into a judicial inertia. . . ."). Proper deference coincides with the complexity of the procurement issue. "[J]udges are ill-equipped to settle the delicate questions involved in procurement decisions where long and complex factual histories, subtle economic factors, and the need for expeditious buying decisions require assessments 'better left to the expertise of an executive agency. . . .'" *Kinnett Dairies, Inc. v. Farrow,* 580 F.2d 1260, 1271 (5th Cir.1978) (quoting *Hayes Intern Corp. v. McLucas,* 509 F.2d 247, 258 (5th Cir.1975)). Resolution of the issue presented in this case does not require comprehensive analysis of the reticulating Federal Acquisition Regulations. The issue presented and specific procurement regulations that apply are fairly straightforward. Accordingly, while due consideration is given the Corps' and the Comptroller's familiarity with procurement matters, the Court is obliged to independently review the Corps' decision for compliance with the regulatory scheme. *Choctaw,* 761 F.2d at 618–19 n. 17.

■ The Federal Acquisition Regulations confer discretionary authority upon contracting officers to permit correction of mistakes in bidding disclosed before a contract is awarded. 48 C.F.R. § 14.406–3. In pertinent part, the regulations provide: "[i]f a bidder requests permission to correct a mistake and clear and convincing evidence establishes both the existence of the mistake and the bid actually intended, the agency head may make a determination permitting the bidder to correct the mistake[.]" *Id.*, § 14.406–3(a). Thus, if the evidence available to Defendant Hoffman at the time he made his decision did not clearly and convincingly establish McKnight Construction's intended bid, he lacked authority to allow the correction.

The Corps found that the evidence available to Hoffman established a mistake in McKnight Construction's bid, but did not clearly and convincingly establish the *intended* bid. (Admin.Rec.Exh. 3, Tab D, Division Commander's June 28, 1994, decision.) The Corps concluded that while the evidence of an improper allocation of bid line items one, two, four and five is clear and convincing, the bid is uncorrectable because "neither the record nor the bid working papers provide clear and convincing evidence as to how McKnight would have distributed or allocated these costs for the base bid among bid items 1, 2, 4 and 5." (Admin.Rec., Exh. 3, Tab D, Statement of Division Counsel p. 4, ¶ 11.) On this basis, the Corps concluded that under the Federal Acquisition Regulations, McKnight Construction's request to correct the mistake must be denied. (*Id.*, Statement of Division Counsel pp. 4–5, ¶ 15.) The Comptroller General agreed.

The evidence in question consists of McKnight Construction's submitted bid, Mr. McKnight's pre-bid work file, his affidavit, and the work papers he prepared after bid opening. The Corps argues that the cost computations in McKnight's bid work papers are so disorganized that they obscure his intended allocation of bid line items: "[i]t is not possible from McKnight's bid papers to

determine how the distribution or allocation was made to any of the four bid items [1, 2, 4 and 5] at issue.) (Admin.Rec., Exh. 3, Tab D, Statement of Division Counsel p. 4, ¶ 12.) This assessment of McKnight's bid work papers is uncontested; McKnight himself testified that the proper allocation of bid line items could not be ascertained from his bid work papers.

The bid work papers were not the only evidence available to the Corps in reviewing McKnight Construction's request to correct its bid, however. McKnight's affidavit explains the manner in which he prepared his bid and clarifies his intended allocation of bid line items. The Corps dismissed the probative value of McKnight's affidavit. (Admin.Rec., Exh. 3, Tab D, Statement of Division Counsel p. 3, ¶ 10: "In the present case the bidder has provided no independent proof [of his intent], except for the *unsupported statements* in his affidavit....") (emphasis added). Defendant Hoffman testified at the hearing that without corroboration in his pre-bid work papers, McKnight's affidavit does not, in the Corps' view, satisfy the requisite clear and convincing evidentiary standard.

█ In pertinent part, the regulations provide that when a bidder requests a correction,

> [t]he request must be supported by statements (sworn statements, if possible ) and shall include all pertinent evidence such as the bidder's file copy of the bid, the original worksheets and other data used in preparing the bid, subcontractors' quotations, if any, published price lists, and any other evidence that establishes the existence of the error, the manner in which it occurred, and the bid actually intended.

48 C.F.R. § 14.406–3(g)(2) (emphasis added). Although bid work papers can be (and typically should be) relied upon as the best objective evidence of the intended bid, *id.,* the Corps misapprends the regulations by reading into them a requirement that in *all* cases of mistake, the intended bid can be established only from bid working papers. There is no such requirement. The Corps' formulation of such a rule conflicts with the regulations' implicit directive that supporting statements be considered, *id.,* § 14.406–3(g)(2), and is incompatible in this case with the regulations' explicit objective of obtaining the best deal for the Government, *id.,* § 14.101(e). Moreover, there is absolutely no requirement that a contractor's work papers be related in any way to the line items of the bid.

In appropriate cases, heavy reliance upon bid work papers (and other evidence that exists contemporaneously with the submission of the bid) is necessary to ensure the integrity of the sealed bidding process. An unscrupulous bidder can not devise such evidence after the bids of competitors are known. *See Matter of Bill Strong Enterprises, Inc.,* 86–2 CPD P 173, 1986 WL 63835, at 2 (C.G.1986). Correcting bids "merely on the basis of general, unsubstantiated allegations of inadvertent error would open the competitive bidding system to the possibility of manipulation." *Id.* These concerns, however, are inapposite in this case.

█ Reallocating Plaintiff's bid line items would not affect the amount of its base bid (upon which the award was made), alter any substantive aspect of the bid, or otherwise confer on Plaintiff an unfair advantage. Further, proper consideration of McKnight's affidavit in this case would not undermine the integrity of the sealed bidding process in other cases. The fact that it might be improper in other scenarios to rely on an affidavit without corroborative bid work papers does not warrant or justify the ritualistic approach the Corps takes here. The weighing of the evidence under 48 C.F.R. § 14.406–3 must be done on a case-by-case basis. Plaintiff's request to correct its bid does not constitute, nor could it reasonably be perceived as, a manipulative post-bidopening tactic. Any suggestion that McKnight's mistake and attempt to correct were contrived to obtain advantage over his competitors for the contract is disingenuous.

As Plaintiff's counsel observes, a casual inspection of the bid abstract reveals the transpositional character of the mistake. Defendant Hoffman testified that from the bid instrument itself it is clear that McKnight Construction intended to bid

$4,203,500 for line items four and five. The Comptroller agreed. B–257782 at 4. The Corps maintains that where McKnight Construction intended to allocate the two bids of $250,000.00 is unclear. Notably, these two bid line items together compose less than three percent of the base bid. Furthermore, based on Hoffman's testimony, a bid of $250,-000 or a bid of $100,000 could have been placed in any one of the first three bid line items without causing the bid to be materially unbalanced.

Although, as already indicated, the transposition that occurred does not strike the Court as imperceptible, McKnight's sworn affidavit in conjunction with the bid itself amply clarified any ambiguity. Given the transpositional nature of the mistake and its conspicuousness from the four corners of the bid itself, McKnight's affidavit was sufficient to clearly and convincingly establish the intended bid. *Cf. Matter of Satellite Services, Inc.*, 86–2 CPD P 521 (C.G.1986); *Matter of Wynn Construction Company*, 86–1 CPD P 184 (C.G.1986).

The Court does not ascribe to the Corps any bad faith or improper motive in its rejection of McKnight's affidavit as adequate clarification of his intent. But the procurement regulations' provisions for correcting bid mistakes entitled McKnight Construction to full and fair consideration of its request for correction and the supporting affidavit. Because the Corps' disregard of McKnight's affidavit is at variance with the regulatory scheme, I find that Plaintiff has met its burden of showing a substantial likelihood of success on the merits.[6] In light of the foregoing, there is no need at this point to consider the parties' arguments pertaining to the probative value of McKnight's post-bid-opening work papers.

**Irreparable Injury**

The question of irreparable injury turns on whether movant will, absent an injunction *pendente lite*, have an adequate remedy at law should it prevail upon a trial on the merits. *See Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974). "An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir.1987). *See also Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir.1983). Although Plaintiff has a legal remedy if successful in this action, that remedy, if Conner Brothers proceeds toward completion of the subject project, is limited to recovery of bid preparation costs. *Collins & Co., General Contractors v. Claytor*, 476 F.Supp. 407, 410 (N.D.Ga.1979).

---

6. The Court further notes that the Corps is incorrect in now arguing that "GAO applied its general rule that an agency's authority to permit correction of bids is limited to bids that are responsive, and may not be exercised to make an otherwise non-responsive bid responsive." (Def.'s Br., Dec. 12, 1994, at 7.) The Comptroller General actually rejected the argument that McKnight Construction's bid could not be corrected because it was nonresponsive. B–257782 pp. 3–4. The Corps, contrary to its position now, implicitly rejected the same argument in denying McKnight Construction's request to correct its bid. (Admin.Rec., Exh. 3, Tab. D. Statement of Division Counsel, p. 3, ¶ 9.)

The "responsiveness" of a bid concerns whether the bidder has promised to perform in the precise manner requested by the government in the IFB. *See* 48 C.F.R. § 14.301(a). "The requirement that a bid be responsive is designed to avoid unfairness to other contractors who submitted a sealed bid on the understanding that they must comply with all of the specifications and conditions in the invitation for bids, and who could have made a better proposal if they imposed conditions upon or variances from the contractual terms the government had speci-

fied." *Toyo Menka Kaisha, Ltd. v. United States*, 597 F.2d 1371, 1377, 220 Ct.Cl. 210 (1979).

The Federal Acquisition Regulations provide that "[t]he authority to permit correction of bids is limited to bids that, as submitted, are responsive to the invitation and may not be used to permit correction of bids to make them responsive." 48 C.F.R. § 14.406–3. There is no requirement in the regulations, however, that a materially unbalanced bid *must* be rejected as "nonresponsive." The regulations are clear that bids bearing certain nonconformities (to the solicitation or applicable regulations) "shall" be rejected, *id.* § 14.404–2(a)–(d), (h)–(j), (*l*)–(m), but other bids, including those that are materially unbalanced, "may" be rejected. *Id.*, § 14.404–2(g); *see also id.*, § 15.814(c) ("Offers that are materially unbalanced *may* be rejected"); *id.*, § 52.214–10(e) (prescribing the following language that must be included in certain solicitations: "The Government *may* reject a bid as nonresponsive if the prices are materially unbalanced between line items . . . .") (emphases added). Thus, Defendants' argument that a materially unbalanced bid *must* be rejected as nonresponsive to the IFB is mistaken.

This remedy would not adequately compensate Plaintiff for lost profits to which it should be entitled if, at trial, it establishes that under the Federal Acquisition Regulations it was wrongfully denied its request to correct its bid. Plaintiff has met its burden of showing irreparable injury.

### Balance of Hardships

■ The balance of the relative hardships in this case also warrants injunctive relief. Plaintiff's lost profits on this contract would be substantial.[7] The hardship on the Government is less significant. Plaintiff deferred filing this lawsuit at the Government's instance so that the contract could be awarded and the funds committed so that the appropriation would not lapse. This delay cannot be held against McKnight Construction. The funds for this procurement have been appropriated and will be obligated even if an injunction issues. There is no reason to suggest that McKnight Construction is other than ready and able to begin and complete the contract. McKnight Construction has satisfactorily completed other similar jobs for the Corps. The renovations will be completed. The hardship on the Government is the delay that will necessarily result by virtue of the injunction. The Court recognizes that the work on this project needs to proceed as quickly as possible. Nevertheless, the delay flows (assuming Plaintiff proves at trial that it should have been awarded the contract) from the Corps' own failure to comply with the regulations in awarding the contract.

Conner Brothers, reasonably expecting to proceed with the contract, has made arrangements to begin. To the extent the Government later incurs liability to Conner Brothers, that, too, is the result of the Corps' mistake. In any event, the Government will save $119,000 if McKnight Construction performs the contract. With these considerations in mind, I find the balance of hardships tips in favor of Plaintiff.

### Public Interest

■ The public interest in federal procurement is always served by expeditious completion of government projects. There is an overriding public interest, however, in protecting the integrity and cost effectiveness of the procurement process. Ultimately, the public interest is best served by measures that ensure strict adherence to the bidding procedures promulgated in federal procurement statutes and regulations. *See Choctaw*, 761 F.2d at 618–19 n. 17; *See also* 48 C.F.R. § 14.101(e). Further, in this case the public interest is served by saving $119,000.

### CONCLUSION

Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction is GRANTED. Having determined that Plaintiff has established the need for a preliminary injunction, the Defendants are hereby ENJOINED from implementing and administering the subject construction contract pending final resolution of Plaintiff's Complaint. Within thirty days of the date of this Order, Plaintiff must provide this Court with a written statement from its surety that any bond obligations required to demonstrate that Plaintiff is able and ready to complete the work required under the contract will be forthcoming. Otherwise, the injunction will expire automatically.

### APPENDIX

| | McKnight Construction | Connor Brothers Const. Co. | Dawson Company | Wright Associates, Inc. | Government |
|---|---|---|---|---|---|
| 1 | 4,203,500.00 | 196,376.00 | 200,000.00 | 305,900.00 | 395,557.00 |
| 2 | 4,203,500.00 | 37,396.00 | 20,000.00 | 23,050.00 | 55,780.00 |
| 3 | 100,000.00 | 52,094.00 | 50,000.00 | 121,350.00 | 75,692.00 |
| 4 | 250,000.00 | 4,303,584.00 | 3,334,000.00 | 4,230,759.00 | 4,114,668.00 |
| 5 | 250,000.00 | 4,303,584.00 | 3,334,000.00 | 4,230,759.00 | 4,052,434.00 |

7. Mr. McKnight testified that the company's estimated profit from this contract would exceed $1.4 million.

| | McKnight Construction | Connor Brothers Const. Co. | Dawson Company | Wright Associates, Inc. | Government |
|---|---|---|---|---|---|
| 6 | 2,000,000.00 | 2,370,116.00 | 3,000,000.00 | 2,198,253.00 | 2,778,708.00 |
| 7 | 2,000,000.00 | 1,019,578.00 | 1,000,000.00 | 1,029,829.00 | 952,725.00 |
| 8 | 1,100,000.00 | 831,202.00 | 1,000,000.00 | 990,000.00 | 1,091,467.00 |
| 9 | 2,000,000.00 | 3,149,922.00 | 4,000,000.00 | 3,658,750.00 | 3,648,995.00 |
| 10 | 600,000.00 | 434,148.00 | 1,000,000.00 | 226,050 | 274,808.00 |
| | 16,707,000.00 | 16,698,000.00 | 16,938,000.00 | 17,014,700.00 | 17,440,834.00 |