McKNIGHT CONSTRUCTION
COMPANY, INC.,
Plaintiff,

v.

William J. PERRY, Secretary of Defense, Togo D. West, Jr., Secretary of the Army, and Robert C. Hoffman, Contracting Officer, U.S. Army Corps of Engineers, Savannah District, Defendants,

Conner Bros. Construction Co., Inc., Defendant–Intervenor.

Civ. A. No. CV194–188.

United States District Court,
S.D. Georgia,
Augusta Division.

June 9, 1995.

See also 888 F.Supp. 1178.

Karl Dix, Jr., Smith, Currie & Hancock, John B. Long, Dye, Tucker, Everitt, Wheale & Long, Augusta, GA, for plaintiff.

Melissa Stebbins Mundell, Savannah, GA, for Dept. of Defense, Dept. of the Army, Robert C. Hoffman.

Robert D. Marshall, Griffin, Cochrane & Marshall, Atlanta, GA, for Conner Bros. Const. Co., Inc.

## ORDER

BOWEN, District Judge.

The above-captioned case is before the court on motions for summary judgment filed

by Plaintiff and the Federal Defendants.[1] In this lawsuit, McKnight Construction Company, Inc. (McKnight Construction) seeks a declaratory judgment and a permanent injunction barring the Federal Defendants from implementing and administering a federal construction contract awarded by the U.S. Army Corps of Engineers, Savannah, Georgia District (hereafter "the Corps") to Conner Bros. Construction Co., Inc. (Conner Brothers). By Order dated December 23, 1994, the Court granted preliminary injunctive relief pending final resolution on the merits. *McKnight Construction Company, Inc. v. William J. Perry, et al.,* 888 F.Supp. 1178 (S.D.Ga.1994).

The parties agree that the case is ripe for summary resolution. (Joint Statement Regarding Disposition.) Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see generally Anderson v. Radisson Hotel Corp.,* 834 F.Supp. 1364, 1367–68 (S.D.Ga.1993) (reviewing the standards for granting summary judgment). The Court has carefully reviewed the portions of the administrative record referenced by the parties.

The facts presented in the Court's December 23, 1994, Order, *supra,* 888 F.Supp. at 1180–81, are incorporated herein as if stated verbatim and supplemented as follows. Bids were opened on June 20, 1994. McKnight Construction was the apparent low bidder by $119,000. A copy of the bid abstract is attached to this Order.[2] Shortly after bid opening, Conner Brothers discovered that Plaintiff's bid was materially unbalanced, *see* 48 C.F.R. § 15.814, due to its misallocation of bid line items one, two, four and five. Conner Brothers, who was the next lowest bidder, promptly informed the Corps of McKnight Construction's mistake by letters dated June 21 and 22, 1994. The June 22 letter indicated that Conner Brothers intended to protest if McKnight Construction's bid was not rejected as nonresponsive. That same day, June 22, McKnight Construction, having realized the mistake, telephoned the Corps to advise it of the mistake. By letter dated June 23, 1994, counsel for McKnight Construction requested that the Corps permit correction of the mistake. On June 24, 1994, counsel for McKnight Construction faxed a similar letter to the Corps and included William Davis McKnight's personal affidavit. Mr. McKnight's affidavit thoroughly explains how the mistake occurred and clarifies his intended allocation of prices among the bid line items in question. (Admin.Rec., Vol. I, Exh. 3, Tab E–7; 888 F.Supp. at 1180–81 n. 4.) Along with the June 24 letter, counsel forwarded to the Corps Mr. McKnight's bid work papers. As indicated in the December 23, 1994, Order, there is no dispute that the bid work papers do not identify bid items, buildings, subcontractor pricing, or other aspects of the project by which McKnight's intended allocation of bid line items could be ascertained.

Defendant Robert C. Hoffman, the Corps' contracting officer, submitted McKnight Construction's request to correct and bid work papers to the Corps' cost engineering branch for its review and recommendation. (Transcript of the Dec. 12, 1994, hearing, hereafter "TR," at 42.) The engineering branch concluded that McKnight Construction's intended bid could not be determined because the "bid work papers ... didn't relate to the line items at all in any fashion." (Testimony of Hoffman, TR at 42.) Hoffman reported to the Corps' Division Commander that McKnight's affidavit

does not explain how the bidder calculated the amounts allegedly intended for the bid items, other than on "years of experience in the construction industry" as well as

---

**1.** "The Federal Defendants" indicates, collectively, the Secretary of Defense, Secretary of the Army, Contracting Officer, and Army Corps of Engineers. "The Defendants" will indicate the Federal Defendants *and* the Defendant–Intervenor. Plaintiff's Motion to Supplement the Ad-ministrative Record, having been read and considered, is GRANTED.

**2.** The attached copy, unlike the one attached to the December 23, 1994, Order, reflects the base bid *and* additive number one.

pricing received for subcontracting, materials and labor to be furnished by McKnight. The statement attributes the mistake to what amounts to a error [sic] in entering bid item amounts onto the bid form in the last minute rush to submit a bid before opening. The working papers do not clarify the bid item allocation since the amounts for individual bid items are not broken down therein. No quotations from subcontractors or suppliers were included in these working papers.

(Admin. Rec., Vol I, Exh. 3, Tab A, pp. 4–5.) Hoffman thus recommended that McKnight Construction's request to correct be denied. *Id.* Counsel for the Division Commander agreed that the request should be denied because "the bidder has provided no independent proof [of his intended bid], except for the unsupported statements in his affidavit...." (Admin. Rec., Vol. I, Exh. 3, Tab D, p. 3.) The Division Commander concurred and denied Plaintiff's request to correct. (Admin.Rec., Vol. I., Exh. 3, Tab D.) This lawsuit ensued after the Comptroller General denied McKnight Construction's protest.

■ Judicial review of the Corps' decision is authorized by 5 U.S.C. § 701, et seq. Section 706 defines the scope of judicial review.[3] The Court previously addressed the scope of review under § 706. (888 F.Supp. at 1181–82.) The Defendants seize upon the language "arbitrary" and "capricious" found in § 706(2)(A) and "no rational basis" found in

cases interpreting and applying § 706, *e.g.*, *Kinnett Dairies, Inc. v. Farrow,* 580 F.2d 1260, 1271 (5th Cir.1978), in support of their argument that Plaintiff's inability to corroborate McKnight's affidavit with his bid work papers supplied a rational basis for the Corps' decision. The fervor with which this argument has been advanced[4] compels the following added observations regarding § 706.

Executive agencies delegated responsibility for awarding and administering government contracts occupy the best position to resolve procurement disputes. A civil action pursuant to 5 U.S.C. § 701, et seq. charges the district court with a duty to provide independent judicial review of the agency's decision-making process, however. Section 706 indeed circumscribes the scope of judicial review, including ways not mentioned by the Defendants. (*See* note 3, *supra.*) As previously indicated, the limited scope of judicial review effects an exacting burden upon a disappointed bidder seeking a judicial remedy. (888 F.Supp. at 1182.) That burden is not insurmountable, nor is it as onerous as the tenor of Defendants' arguments implies. Section 706(2)(A)'s use of the terms "arbitrary" and "capricious" and the courts' use of "no rational basis" (or "no reasonable basis") are not intended to reduce judicial review under § 706 to a hollow formality. These terms narrow the parameters of judicial review to ensure that in providing the critical and probing examination called for by the

3. Section 706, 5 U.S.C., states as follows:

Scope of review. To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and
(2) hold unlawful and set aside agency action, findings, and conclusions found to be—
(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
(B) contrary to constitutional right, power, privilege, or immunity;
(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;
(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

4. Conner Brothers maintains, for example, that "[i]t strains credulity to assert that the procuring agency had no rational basis to conclude that there was not clear and convincing evidence of the intended bid...." (Conner Brother's Mar. 22, 1995, Br. at 3.)

unequivocal language of the statute,[5] judges recognize and respect the expertise of executive agencies concerning statutes and regulations they are entrusted to administer. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844–45, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984); *Choctaw Mfg. Co., Inc. v. U.S.,* 761 F.2d 609, 616 (11th Cir.1985); *Shoals American Industries, Inc. v. U.S.,* 877 F.2d 883, 887–89 (11th Cir.1989). While the court is not free to substitute its judgment for that of a procuring agency, the language upon which the Defendants rely so heavily does not suggest that courts mindlessly rubber-stamp agency decisions. The Court carefully reviews the Corps' decision making process for compliance with the regulatory scheme. 5 U.S.C. § 706(2).

█ The Federal Acquisition Regulations' provisions for correcting bid mistakes are discussed in 888 F.Supp. at 1185. Evidence of the intended bid must be clear and convincing or the contracting officer is without authority to permit correction. 48 C.F.R. § 14.406–3(a). For the typical request to correct a mistake, bid work papers may be the most reliable evidence of the error, the manner in which it occurred, and the intended bid. To be sure, the circumstances may warrant verification of the alleged intended bid with facts and figures in bid work papers or other evidence that existed prior to bid opening. *E.g., Matter of: Apache Enterprises, Inc.,* 1994 WL 148261 (C.G.1994) (low bidder's request for upward correction of base bid denied because bidder's inability to verify with work papers that mistake resulted from omission of parts prices gave rise to legitimate doubt as to what the bidder actually intended); *cf. Matter of: Treweek Construction,* B–183387, 75–1 CPD 227 (C.G. 1975); *Matter of: Montgomery Construction*

*Co., Inc.,* 1986 WL 63178 (C.G.1986); *Matter of: RJS Constructors,* 1994 WL 576114 (C.G. 1994); *Matter of: Weather Data Services, Inc.,* 1991 WL 73029 (C.G.1991). In such cases, preservation of the integrity of the competitive bidding process may necessitate virtually exclusive reliance on evidence that existed *before* competitors' bids became known. Permitting correction upon a lesser showing could leave the process vulnerable to manipulation by unscrupulous bidders. "For example, a bidder could submit a flagrantly nonresponsive bid and then, depending upon the outcome of the bidding results, seek to cure the nonresponsiveness on a contrived claim of inadvertent error or decide not to cure the nonresponsiveness as the bidder's interest so dictated." *Matter of: Bill Strong Enterprises, Inc.,* 1986 WL 63835 at *2 (C.G. 1986).

The circumstances attending McKnight Construction's mistake and request to correct do not, unlike the cases surveyed by the Defendants, implicate the integrity of the competitive bidding process. The obvious transpositional character of the misallocated bid line prices and the undisputed fact that the requested reallocation would not affect the base bid, change any substantive aspect of the bid, or otherwise confer unfair advantage upon Plaintiff rendered bid manipulation highly improbable.[6] This is not a case where the low bidder, after learning the amount of the next lowest bid, requested to adjust the low bid upward based on an alleged mistake. Nor is this a case where a nonresponsive bidder alleges after bids are opened that bid line items exceed statutory cost limitations by mistake. In short, the circumstances did not give rise to legitimate doubt as to whether McKnight actually in-

---

**5.** As indicated *supra,* § 706 mandates that "the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of an agency action."

**6.** The context in which the mistake occurred is undisputed. Preparation of sealed bids on contracts like the one involved here commonly entails literal last minute changes among the bid

line items due to late submission of subcontractor pricing. (TR at 73.) McKnight testified that his final calculations were prepared moments before bid opening. (TR at 69.) Neither the Federal Defendants nor the Defendant–Intervenor directly controvert McKnight's testimony in this regard or otherwise suggest a credible basis for questioning it. McKnight made final calculations and completed his bid form in a hurried manner. (*See,* 888 F.Supp. at 1180 n. 3 and 1180–81 n. 4.)

tended the allocation of bid line items that his affidavit represents he intended.

I find that as a matter of law the Corps erred in this case by effectively reading into the procurement regulations a requirement that in *all* cases of mistake, the bidder seeking correction *must* support sworn evidence of the intended bid with corroborative bid work papers. Although the Federal Defendants maintain that McKnight's affidavit was considered ("with some skepticism," Govt.'s Feb. 9, 1995, Br. at 19), the Corps' consideration of the affidavit was qualified in a way not prescribed by the regulations: the Corps "afforded appropriate weight and probative value to the affidavit of McKnight Construction Co., Inc. *to the extent the post-bid created affidavit was consistent with documentation created contemporaneously with or prior to the bid.*" (Hoffman Aff., Feb. 3, 1995) (emphasis added). The regulations do not expressly indicate or in any way imply that corroborative bid work papers are, regardless of the circumstances, a condition precedent to the contracting officer's consideration of a sworn statement when weighing the evidence for bid correction purposes. *See* 48 C.F.R. § 14.406–3. That Mr. McKnight's bid work papers do not establish his intended bid predominated the Corps' evaluation of Plaintiff's request to correct at every stage of review. In another scenario, the Corps' hypertechnical approach may have been justified; here it was not.

The Corps' treatment of Plaintiff's request to correct the mistake appears to reflect a genuine effort to abide by the rules.[7] However, the Corps' insistence upon bid work papers to corroborate what was clearly and convincingly established by McKnight's affidavit was arbitrary and contravened the procurement regulations. The error was prejudicial; it cost the lowest bidder the contract. The effect was to unfairly and unreasonably penalize Plaintiff for Mr. McKnight's manner of bid preparation. For the foregoing reasons, Plaintiff's Motion for Summary Judgment is **GRANTED**; the Federal Defendants' Motion for Summary Judgment is **DENIED**. The Corps' award of the contract to the Defendant–Intervenor is hereby set aside pursuant to 5 U.S.C. § 706. The Federal Defendants' Motion to Require an Injunction Bond is **DENIED** as moot.

### APPENDIX

| | McKnight Construction | Conner Brothers Const. Co. | Dawson Company | Wright Associates, Inc. | Government |
|---|---|---|---|---|---|
| 1 | 4,203,500.00 | 196,376.00 | 200,000.00 | 305,900.00 | 395,557.00 |
| 2 | 4,203,500.00 | 37,396.00 | 20,000.00 | 23,050.00 | 55,780.00 |
| 3 | 100,000.00 | 52,094.00 | 50,000.00 | 121,350.00 | 75,692.00 |
| 4 | 250,000.00 | 4,303,584.00 | 3,334,000.00 | 4,230,759.00 | 4,114,668.00 |
| 5 | 250,000.00 | 4,303,584.00 | 3,334,000.00 | 4,230,759.00 | 4,052,434.00 |
| 6 | 2,000,000.00 | 2,370,116.00 | 3,000,000.00 | 2,198,253.00 | 2,778,708.00 |
| 7 | 2,000,000.00 | 1,019,578.00 | 1,000,000.00 | 1,029,829.00 | 952,725.00 |
| 8 | 1,100,000.00 | 831,202.00 | 1,000,000.00 | 990,000.00 | 1,091,467.00 |
| 9 | 2,000,000.00 | 3,149,922.00 | 4,000,000.00 | 3,658,750.00 | 3,648,995.00 |
| 10 | 600,000.00 | 434,148.00 | 1,000,000.00 | 226,050 | 274,808.00 |
| Base Bid | 16,707,000.00 | 16,698,000.00 | 16,938,000.00 | 17,014,700.00 | 17,440,834.00 |
| Additive #1 | 143,000.00 | 271,000.00 | 275,000.00 | 283,722.00 | 674,656.00 |
| Total Base Bid Plus Additive #1 | 16,850,000.00 | 16,969,000.00 | 17,213,000.00 | 17,298,422.00 | 18,115,490.00 |

7. (*See* Defendant Hoffman's testimony, TR at 43– 46, 52, 55.)