United States Court of Appeals,

Eleventh Circuit.

No. 95-8811.

McKNIGHT CONSTRUCTION CO., INC., Plaintiff-Appellee,

v.

DEPARTMENT OF DEFENSE, William J. Perry, Secretary; Department of the Army, Togo D. West, Jr., Secretary, Robert C. Hoffman, Contracting Office, Savannah District of the United States Army Corps of Engineers, Defendants-Appellants,

Conner Bros. Construction Co., Inc., Intervenor-Defendant-Appellant.

June 17, 1996.

Appeals from the United States District Court for the Southern District of Georgia. (No. CV194-188), Dudley H. Bowen, Jr., Judge.

Before KRAVITCH and CARNES, Circuit Judges, and HILL, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

The Army Corps of Engineers ("Army") and Conner Brothers Construction Co., Inc., appeal the district court's grant of summary judgment in favor of McKnight Construction Co. Although McKnight was the low bidder on an Army construction project, McKnight's bid was rejected because it did not conform to the Army's guidelines. After the Army and the Comptroller General refused to accept McKnight's bid corrections, McKnight appealed to the district court, which reversed the Army's decision. We now reverse the decision of the district court.

I.

The Army, acting through its Corps of Engineers, solicited bids for construction of barracks at Fort Benning, Georgia. At bid opening, the Army had received bids from four companies. The low

bidder was McKnight; Conner Brothers was the next lowest bidder. The following day, Conner Brothers notified the Army of apparent errors in McKnight's bid and asked the Army to reject it as "nonresponsive." The day after Conner Brothers' protest, the Army began a review to determine whether McKnight's bid was responsive.

A bid is nonresponsive when it is mathematically and materially unbalanced; such a bid must be rejected. *See G.C. Ferguson 4-T Constr.,* 92-1 CPD ¶ 381, 1992 WL 143301 (CG1992); *Sanford Cooling,* 91-1 CPD ¶ 376, 1991 WL 86957 (CG1991). A bid is mathematically unbalanced when each line item in the bid does not reflect the actual costs to the bidder. *See* 48 C.F.R. §§ 14.404-2(g), 15.814. The Army determined that Lines 1 and 2 of McKnight's bid were mathematically unbalanced because the amount listed in each line was significantly higher than that listed by other companies and the government's own estimate. For both line items 1 and 2, McKnight bid $4,203,500; the next highest bid estimate for the work corresponding to those lines was the government's estimate of $395,557 for line item 1 and $55,780 for line item 2. A chart with all the bids is reproduced as Table I.

TABLE I

|   | McKnight Construction | Conner Brothers Const. Co. | Dawson Company | Wright Associates, Inc. | Government |
|---|---|---|---|---|---|
| 1 | 4,203,500.00 | 196,376.00 | 200,000.00 | 305,900.00 | 395,557.00 |
| 2 | 4,203,500.00 | 37,396.00 | 20,000.00 | 23,050.00 | 55,780.00 |
| 3 | 100,000.00 | 52,094.00 | 50,000.00 | 121,350.00 | 75,692.00 |
| 4 | 250,000.00 | 4,303,584.00 | 3,334,000.00 | 4,230,759.00 | 4,114,668.00 |
| 5 | 250,000.00 | 4,303,584.00 | 3,334,000.00 | 4,230,759.00 | 4,052,434.00 |
| 6 | 2,000,000.00 | 2,370,116.00 | 3,000,000.00 | 2,198,253.00 | 2,778,708.00 |

| | | | | | |
|---|---|---|---|---|---|
| 7 | 2,000,000.00 | 1,019,578.00 | 1,000,000.00 | 1,029,829.00 | 952,725.00 |
| 8 | 1,100,000.00 | 831,202.00 | 1,000,000.00 | 990,000.00 | 1,091,467.00 |
| 9 | 2,000,000.00 | 3,149,922.00 | 4,000,000.00 | 3,658,750.00 | 3,648,995.00 |
| 10 | 600,000.00 | 434,148.00 | 1,000,000.00 | 226,050 | 274,808.00 |
| Base Bid | 16,707,000.00 | 16,698,000.00 | 16,938,000.00 | 17,014,700.00 | 17,440,834.00 |
| Additive # 1 | 143,000.00 | 271,000.00 | 275,000.00 | 283,722.00 | 674,656.00 |
| Total Base Bid Plus Additive # 1 | 16,850,000.00 | 16,969,000.00 | 17,213,000.00 | 17,298,422.00 | 18,115,490.00 |

_____

Where a mathematically unbalanced bid is so grossly unbalanced that it will result in an advance payment, the bid is materially unbalanced and must be rejected.  48 C.F.R. § 15.814(b)(2); *see Boston Graving Dock Corp.,* 91-2 CPD ¶ 178, 1991 WL 162533 (CG1991).  Because the estimates in lines 1 and 2 front-loaded the bid with disproportionately high payments, the Army found that the bid was materially unbalanced.  Approximately 50% of the bid's total value of $16,850,000 was captured in the first two lines of McKnight's bid; the next highest figure for the combined cost of each of the first two line items was the government's estimate of approximately $450,000, which constituted less than 2.7% of the overall bid price.

Although there is no suggestion that McKnight's error was deliberate, a bidder could potentially manipulate the bidding process by intentionally front-loading a bid, and in the event that the "error" went unnoticed, collect extremely large advance payments.  Advance payments are disfavored because a bidder that receives early payments gains an unfair advantage over other bidders through the potential use of interest-free money.  In addition,

because later work is undervalued, there is a reduced incentive to complete the work.

On the same day that the Army began its review of McKnight's bid, McKnight notified the Army that its bid contained mistakes and sought permission to file a corrected bid. Two days later, McKnight formally requested permission to file a corrected bid and submitted an affidavit from its president, William McKnight. Later, McKnight sent the Army "post-bid opening" worksheets, which were created to "reconstruct ... [the] thought process in allocating the total bid price to the individual line items in the bid schedule." The only pre-bid documentation provided was the bid papers, and "there is no dispute that these did not identify bid items, buildings, subcontractor pricing, or other aspects of the project by which McKnight's intended allocation of bid line items could be ascertained." *McKnight Construction Co. v. Perry,* 888 F.Supp. 1186, 1187 (S.D.Ga.1995).

In his affidavit, William McKnight stated that although the company's overall bid was correct, in filling out the bid sheet he had made a transpositional error, mistakenly switching the bid prices for line items 1 and 2 with those intended for line items 4 and 5. The total bid would have been unchanged.

After reviewing McKnight's request for bid correction, the Army found that although McKnight had made mistakes in computing its bid, it had not provided clear and convincing evidence of its intended bid with respect to each line item, as required by Federal Acquisition Regulations. *See* 48 C.F.R. § 14.406-3(a). Thus, the Army refused to permit McKnight to file a corrected bid. In reaching its conclusion, the Army noted McKnight's inability to furnish independent corroboration for its intended bid. Because the original bid was rejected as nonresponsive, the next lowest bidder,

Conner Brothers, was awarded the contract.

McKnight filed a bid protest with the General Accounting Office that was rejected by decision of the Comptroller General. The Comptroller General determined that although the evidence supported McKnight's contention that it had made a mistake in its bid, there was not clear and convincing evidence of McKnight's intended bid price. The Comptroller General found that the similarity of McKnight's bid on lines 1 and 2 to the government's estimates and the other bids for line items 4 and 5 supported McKnight's contention that line items 1 and 2 should have been placed on lines 4 and 5. [1] More importantly, however, the Comptroller General rejected as "implausible on its face" McKnight's contention that the $250,000 listed on both lines 4 and 5 was the amount intended to be placed on lines 1 and 2. This conclusion was based on the gross disparity that would have resulted on line 2, where the next highest bid estimate would have been the government's estimate of $55,780. Holding that there was a reasonable basis for the Army's refusal to accept the corrected bid, the Comptroller General rejected the uncorrected bid on reasoning similar to that of the Army.

Following the Comptroller General's ruling, McKnight brought this action, challenging the Army's refusal to permit it to correct its bid and the consequent award of the contract to Conner Brothers. Conner Brothers intervened as a defendant. McKnight argues that the Army's actions violated

---

[1]Although the Comptroller General never found that this constituted clear and convincing evidence, the Army seems to have conceded that items 1 and 2 were intended to be placed on lines 4 and 5. The Government's attorney stated:

> As the Court indicated, it is obvious that 1 and 2 are wrong and that those numbers belong in items 4 and 5, but it is not obvious that the opposite is true. That is, that a transposition occurred and that items 4 and 5 belonged in 1 and 2.

the Administrative Procedures Act.

The district court initially granted a preliminary injunction barring the Army from implementing the contract award and later granted McKnight's motion for summary judgment. The Army and Conner Brothers appeal that decision.

## II.

When reviewing a district court's decision to grant summary judgment, we apply the same legal standards as those applied by the district court. The main question before us, therefore, is whether the Army acted arbitrarily, capriciously, or otherwise not in accordance with law when it determined that McKnight failed to present clear and convincing evidence of what it intended to bid. *See Choctaw Manufacturing Co. v. United States,* 761 F.2d 609, 616 (11th Cir.1985) (citing 5 U.S.C. § 706(2)(A)); *see also Latecoere Int'l, Inc. v. United States Dept. of the Navy,* 19 F.3d 1342, 1356 (11th Cir.1994). In addition, if we hold that the Army did not act in accordance with law in refusing to allow McKnight to correct its bid, we must then determine whether the Army lacked a rational basis for finding that the uncorrected bid was not responsive.

## A.

Under Federal Acquisition Regulations, a bid is subject to correction only if the bidder presents clear and convincing evidence that the submitted bid was mistaken and clear and convincing evidence of the actual intended bid. 48 C.F.R. § 14.406-3(a). The Army argues that, based on the evidence presented by McKnight, it reasonably concluded that McKnight had not presented clear and convincing proof of its intended bid. In considering William McKnight's affidavit, the Army claims that it "afforded appropriate weight and probative value ... to the extent the post-bid created affidavit

was consistent with documentation created contemporaneously with or prior to the bid."

The district court found that this statement, along with others, indicated that the Army had adopted a per se rule against statements that were uncorroborated by bid workpapers. 888 F.Supp. at 1190. Such a rule, the district court held, contravened the procurement regulations and was also arbitrary.

The relevant portion of the Federal Acquisition Regulations provides that

> [i]f the bidder alleges a mistake, the contracting officer shall advise the bidder to make a written request to withdraw or modify the bid. The request must be supported by statements (sworn statements, if possible) and shall include all pertinent evidence such as the bidder's file copy of the bid, the original work sheets and other data used in preparing the bid, subcontractor's quotations, if any, published price lists, and any other evidence that establishes the existence of the error, the manner in which it occurred, and the bid actually intended.

48 C.F.R. § 14.406-3(g)(2). Nothing in the regulation suggests that the Army must accept uncorroborated statements; the regulation simply indicates that a statement must support a request to withdraw or modify a bid.

Further, a rule stating that an uncorroborated statement is insufficient to satisfy the clear and convincing standard of proof is not arbitrary. The Comptroller General consistently has taken the position that the failure to provide worksheets or other contemporaneously produced documentation[2] will result in the denial of a request for bid correction. [3]

---

[2]In finding that the Army required bid work papers, the district court overstated the requirement; rather, the Army requires only some form of evidence produced prior to, or contemporaneous with, the bid.

[3]It is for this reason that McKnight's reliance on *Satellite Services, Inc.,* 86-2 CPD ¶ 521, 1986 WL 64270 (CG1986), is misplaced. In that case, the Comptroller General deferred to the Air Force's decision to allow a bidder to modify a bid by reallocating prices from one line to another. In contrast to the

*See RJS Constructors,* 94-2 CPD ¶ 130, 1994 WL 576114 (CG1994); *Weather Data Services, Inc.,* 91-1 CPD ¶ 185, 1991 WL 73029 (CG1991); *Apache Enterprises, Inc.,* 94-1 CPD ¶ 270, 1994 WL 148261 (CG1994); *Fortec Constructors,* 81-2 CPD ¶ 264, 1981 WL 23319 (CG1981). Such a rule makes sense:

> To permit bidders to cure the nonresponsiveness of their bids merely on the basis of general, unsubstantiated allegations of inadvertent error would open the competitive bidding system to the possibility of manipulation. For example, a bidder could submit a flagrantly nonresponsive bid and then, depending on the outcome of the bidding results, seek to cure the nonresponsiveness as the bidder's interest so dictated.

*Bill Strong Enters., Inc.,* 86-2 CPD ¶ 173, 1986 WL 63835 at *2 (CG1986).

Given the Army's strong interest in protecting the integrity of the bidding process, a policy requiring more than a contractor's post-bid statement is not irrational. Unfortunately, some honest contractors may lose contracts because of minor errors on their part; this does not, however, render the Army's rule arbitrary. Because the Army has provided a coherent and reasonable explanation for its refusal to permit McKnight to correct its bid, its decision is sustained. *See Choctaw Manufacturing Co.,* 761 F.2d at 616.

## B.

McKnight argues that even if we affirm the Army's refusal to permit McKnight to correct its bid, we should affirm the district court on the ground that the original bid was not materially unbalanced. As discussed above, a mathematically unbalanced bid is materially unbalanced when it will result in advance payments to the contractor.

The Army asserts that under procurement regulations specifically incorporated in the invitation for bids, the value of the work would be

---

situation here, however, the bidder presented the Air Force with work papers that supported its position.

defined by the terms of the bid that the Army accepted. *See* 48 C.F.R. §
52.232-5; *ACC Constr. Co.,* 93-1 CPD ¶ 142, 1993 WL 49266 (CG1993).
Accordingly, the Army concluded that if the original bid were used, McKnight
was "highly likely" to receive advance payment because "[t]he bid items with
the exceptionally high prices must be done early on in the project whereas
the work which will be performed at the latter stages of the project is
priced ridiculously low."

McKnight disagrees with this determination, contending that its bid, as
originally submitted, would not have entailed advance payments because "all
progress payments would be made from the actual work in place."[4]  McKnight
provides no authority or evidence in support of this claim;  rather, it
merely asserts that the Army was wrong.  We cannot, therefore, say that the
Army's rejection of McKnight's bid as nonresponsive was either arbitrary,
capricious, or an abuse of discretion.

The judgment of the district court is REVERSED, and we REMAND this case
with instructions to the district court to enter judgment for appellants.

---

[4]McKnight also argues that it would be precluded from
receiving advance payments because of representations made in the
course of its appeal of the original rejection of its bid.  These
representations are irrelevant here;  the question is whether the
bid was responsive when made.